STATE of Missouri, Plaintiff–Respondent

v.

Victor Ray NICKS, Defendant–Appellant.

Victor Ray NICKS, Plaintiff–Appellant

v.

STATE of Missouri, Defendant–Respondent.

Nos. 18149, 19052.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 4, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 7, 1994.

---

Raymond L. Legg, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Chief Judge.

Victor Ray Nicks (defendant) was convicted, following a jury trial, of arson in the first

degree, § 569.040,[1] and murder in the second degree, § 565.021.1(2), RSMo 1986. He was charged and convicted as a prior offender, §§ 558.016.2 and 558.019.2(1), and sentenced to confinement for a term of 15 years for each offense. The sentences were ordered served consecutively.

After he was sentenced, defendant filed a motion for post-conviction relief pursuant to Rule 29.15. The Rule 29.15 motion was denied following evidentiary hearing. Defendant appeals the judgment of conviction in the criminal case, No. 18149, and the order denying his Rule 29.15 motion, No. 19052. The appeals were consolidated as required by Rule 29.15(*l*). This court affirms No. 18149 and dismisses No. 19052.

### No. 18149

Virgie Cozart, a neighbor of James Davis, discovered a fire at Davis' residence the morning of January 27, 1991. She had gotten out of bed to put her dog outside when she saw the fire. She ran to the burning house and tried to alert its occupant but got no response. She then reported the fire to the police department. The report was made at 2:13 a.m.

Firefighters who responded to the fire found James Davis' body in the southwest corner of the residence in a bathroom. The cause of Mr. Davis' death was carbon monoxide poisoning secondary to smoke inhalation.

An investigation by personnel of the Missouri Division of Fire Safety determined that the fire originated in the kitchen of the Davis residence. The fire marshal who conducted the investigation testified that burn patterns consistent with a flammable substance having been poured on the floor were found around the perimeter of the kitchen and in front of the kitchen stove. Similar burn patterns were found in a doorway between the kitchen and bathroom where the body was found. A burn pattern about three inches wide extended five or six inches into the bathroom.

The oven door to the kitchen stove ·was open. The fire marshal described the damage to the stove as abnormal. There was scorching inside. It appeared that something combustible had been in the oven.

At the time of the fire, defendant was staying at his father's house near the Davis residence. He was interviewed by police "as a neighborhood witness." Defendant told police that he was chopping wood when he saw two men get out of a truck and carry a jug into the Davis residence. He told them the two men returned to the truck, but the driver went back into the residence after getting a cigarette lighter from the truck. He said the passenger got into the truck; that the driver came back and "drove away rather hurriedly." Defendant claimed he was awakened by sirens a short time later and discovered there was a fire.

Some time after defendant's initial interview by police, he was arrested for driving while intoxicated. He was given a breathalyzer test, booked and placed in a cell. He began screaming that he wanted to talk to the officer who had interviewed him previously about the fire, Officer James Clement. Because defendant appeared to be intoxicated, Officer Clement did not interview him at that time.

The next morning Officer Clement talked to defendant. The fire marshal was also present. Officer Clement advised defendant of his Miranda[2] rights, and defendant acknowledged that he understood those rights. Defendant told Officer Clement that he set the fire.

Defendant gave a tape-recorded statement. He stated that he was at his father's residence watching television the night of the fire; that sometime after midnight he went outside to get firewood for his father's wood stove. After putting the firewood in the stove, defendant went back outside and smoked a cigarette. He could see the Davis residence. He saw Ms. Cozart put her dog outside and saw a truck leave the Davis residence.

Defendant told Officer Clement and the fire marshal:

---

1. References to statutes are to RSMo Supp.1990 unless stated otherwise.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

And I walked over toward the trash can. I had done—I split a little bit of wood, but I walked over toward the trash can sitting on dad's porch, got a newspaper out. Then I went over to my truck grabbed a spray can or primer can and then took a Pepsi bottle out of the back, took my keys out of my pocket, unlocked my gas cap, stuck the siphon hose in it and siphoned some gas out and put it in the little Pepsi jar. Took the hose back out, throwed it in my truck, put the gas cap back on. And I stood there for a little bit thinking how to do it or thinking if I, wondering if I should do it or if I shouldn't do it. Then all of a sudden I just went to hell I'll do it anyway.

Defendant explained that he went to Davis' house. He entered the house, took a towel off the kitchen table, and poured gasoline on it and the newspaper he brought with him. He "put the stuff in the oven, struck a match and throwed it in there, shut the door." Defendant said he turned on the oven. He said he took the Pepsi bottle he brought with him and left. He continued:

Then I went out [the door] and walked over, started walking back towards dad's and I heard a boom so I turned around, ran back over to the house, opened the door, tried to put the fire out and I burnt my finger. I burned the end of my gloves. I took my gloves off and I burnt my finger. Then I heard somebody moving around in the house. I figured they had a cat or something.

Defendant said he had a spray can "like a paint can." He threw it in the oven. He explained, "That's what blew the door off."

Defendant went with Officer Clement and the fire marshal to a service station where defendant's truck was impounded. He took a siphon hose from the back of the truck and gave it to the fire marshal. Defendant said it was the hose he used to siphon gas from his truck into the Pepsi bottle he had taken to the Davis house and used to start the fire. Defendant was taken to his father's house. He took Officer Clement and the fire marshal to a bedroom where he retrieved a pair of coveralls and gloves that had been burned.

Points I and II are directed to defendant's direct appeal. Point III is directed to the appeal of his Rule 29.15 motion.

■ Defendant alleges in his first point on appeal that the evidence was not sufficient to prove his guilt beyond a reasonable doubt. He contends his conviction was based on his confession without "independent corroborating evidence to support the essential facts ... sufficient to justify an inference that the statements were true."

Defendant's first point is based on the requirement of law that in order to support a conviction, "the existence of the crime be proven by evidence independent of mere confession of guilt." *State v. Howard,* 738 S.W.2d 500, 504 (Mo.App.1987). However, as stated in *State v. McQuinn,* 361 Mo. 631, 633, 235 S.W.2d 396, 397 (1951):

It is undoubtedly the rule that confessions of a crime not made in open court or before a committing magistrate and without proof aliunde that a crime has been committed will not sustain a conviction. However, it is equally well established that full proof of the corpus delicti independent of the defendant's extrajudicial confessions is not required. *State v. Kauffman,* 329 Mo. 813, 46 S.W.2d 843 [1932]; *State v. Skibiski,* 245 Mo. 459, 150 S.W. 1038 [1912]; *State v. McGuire,* 327 Mo. 1176, 39 S.W.2d 523 [1931]. As said in *State v. Thompson,* 333 Mo. 1069, 64 S.W.2d 277, 282 [banc 1933], "On the contrary, what seemed to be only slight corroborating facts have been held sufficient. *State v. McGuire,* 327 Mo. 1176, 39 S.W.2d 523."

There was substantial corroborating evidence in this case. The fire marshal who investigated the fire testified that the account defendant gave of how he started the fire was consistent with the findings reached in his investigation. Additionally, defendant acknowledged in his tape-recorded statement that he saw Virgie Cozart look out her window and say something, and that her dog was barking.

Virgie Cozart testified that she let her dog out around this time; that she looked out her window and "hollered" when she saw the fire.

Defendant told Officer Clement that he used a siphon hose to take gasoline from his truck and put it in the bottle he carried to the Davis house to use to start the fire; that he burned himself and his gloves at the fire. After giving his statement to the officer, defendant took the officer and the fire marshal to his truck, removed the siphon hose he claimed he used from the truck and gave it to the fire marshal.

Defendant showed the officer burns on his fingers and gave him his burned gloves and burned coveralls he claimed he had worn. This court holds that the corroborating evidence in this case, coupled with defendant's confession of guilt, was sufficient to support his conviction. Defendant's first point is denied.

■ Defendant's second point contends the trial court erred in admitting his tape-recorded statement in evidence because the state did not show it was voluntarily given. Defendant contends that he was intimidated by Officer Clement; that he felt threatened by Officer Clement because the officer had threatened him in the past.

Defendant was arrested the afternoon of February 4, 1991, for driving while intoxicated. Officer Clement and the fire marshal talked to him the morning of February 5, 1991. At the hearing on defendant's motion to suppress his tape-recorded statement, the fire marshal testified that he did not believe defendant was intoxicated at the time he was questioned. Defendant was advised of his Miranda rights and acknowledged that he understood those rights. Officer Clement and the fire marshal testified that no coercion or force was used to get defendant to make a statement. Defendant was given coffee and allowed to smoke cigarettes during the interrogation.

The trial court ruled, "[U]nder the totality of the circumstances defendant was not deprived of free choice to admit or deny or refuse to answer and was not under physical or psychological coericen [sic] to such a degree that his statement was not voluntary at the time of his confession and therefore it is the ruling of the Court that this will be admitted at the time of trial."

In *State v. Harris*, 774 S.W.2d 487 (Mo. App.1989), the test for determining voluntariness was explained:

[W]here the voluntariness of a confession is in question, the test is whether under the totality of circumstances the defendant was deprived of the free choice to admit, deny, or refuse to answer and whether physical or psychological coercion was present to such a degree that the defendant's will was overborne at the time he confessed. *State v. Lytle*, 715 S.W.2d 910, 915 (Mo. banc 1986). The State must prove voluntariness by a preponderance of the evidence. *State v. Flowers*, 592 S.W.2d 167, 168–69 (Mo. banc 1979). On appeal our role is to determine whether there was sufficient evidence to sustain the finding of voluntariness. Here we defer to the trial court's superior opportunity to evaluate and weigh conflicting evidence. *State v. Avery*, 724 S.W.2d 695, 697 (Mo.App.1987).

*Id.* at 492.

Deferring to the trial court's superior opportunity to assess the credibility of the witnesses who testified at the suppression hearing, this court concludes that the trial court's determination that defendant's tape-recorded statement was voluntarily given was supported by sufficient evidence. Point II is denied.

### No. 19052

Point III is directed to the trial court's denial of defendant's Rule 29.15 motion. The motion was filed July 28, 1992. Following various changes of attorneys of record, an amended motion is shown as having been filed February 26, 1993. Some question exists as to whether the amended motion was timely filed. However, this court does not reach that question, nor the question defendant has attempted to raise by Point III regarding the effectiveness of his trial counsel, for the reason that the record on appeal does not disclose the timely filing of a notice of appeal.

■ The findings of fact and conclusions of law and the order denying defendant's Rule 29.15 motion were filed July 15, 1993. Under Rule 75.01 the court retained control

of the judgment for 30 days commencing July 16, 1993, i.e., through August 14, 1993. *See State v. Garrett,* 816 S.W.2d 309, 310 (Mo.App.1991). Defendant then had 10 days, or until August 25, 1993, in which to file his notice of appeal. *Id. See also* Rule 81.04(a). His notice of appeal was not filed until September 7, 1993.[3] No. 19052 must, therefore, be dismissed for lack of appellate jurisdiction.

The judgment and sentence in No. 18149 is affirmed. The appeal in No. 19052 is dismissed.

SHRUM and MONTGOMERY, JJ., concur.

## ON MOTION FOR REHEARING OR, IN THE ALTERNATIVE, APPLICATION FOR TRANSFER

### PER CURIAM.

Defendant filed a motion for rehearing directed to this court's dismissal of his appeal in No. 19052 for lack of appellate jurisdiction due to defendant's untimely filing of a notice of appeal. He again calls this court's attention to *Labrier v. Anheuser Ford, Inc,* 621 S.W.2d 51 (Mo. banc 1981), for the proposition that a notice of appeal is deemed timely filed if received by the circuit clerk within the time limits of Rules No. 81.04 and 81.05.

That proposition is correct. Here, however, as pointed out in the opinion previously filed at p. 9 n. 3, unlike *Labrier,* the copies of the trial court's records that are before this court in the legal file in No. 19052 do not reflect receipt of the notice of appeal by the circuit clerk at a date other than the September 7, 1993, date shown on the notice of appeal. There is nothing before this court that demonstrates the trial court determined, or should have determined, that its records as to the date the notice of appeal was filed were incorrect.

■ This court has, however, in considering the motion for rehearing in No. 19052, gratuitously reviewed defendant's claimed ineffective assistance of counsel. That claim was based on defendant's trial counsel's failure to call two witnesses who were expected to testify that Officer Clement caused them to confess to crimes unrelated to this case by threatening them.

The motion court was the same court that conducted defendant's criminal trial. It found that defendant's trial counsel interviewed the two witnesses prior to trial and had the witnesses present at trial. It further found:

It is this Court's personal recollection that trial counsel had waited to call these two witnesses until after Detective Clement was called on rebuttal by the State. However, the State did not call Detective Clements [sic] on rebuttal and therefore defense counsel was not allowed to put on these witnesses. This was obviously trial strategy on the part of trial counsel and does not make a case for ineffective assistance of counsel. The law in Missouri provides that a defendant is not entitled to post-conviction remedy relief if the evidence would not provide a defense for defendant but would only impeach the State's witness. *State v. Murphy,* 829 S.W.2d 612 (Mo.App.E.D.1992). In the present case neither of the two witnesses would have provided a defense for [defendant].

The motion court's findings and conclusions are not clearly erroneous. Rule 29.-15(j).

---

**3.** A footnote to the statement of facts in defendant's brief acknowledges that the trial court's docket entry and file stamp show that the notice of appeal was filed late. The sentence that follows states, without further explanation, "Upon information and belief, [defendant's] counsel states that the notice of appeal was enclosed with [defendant's] motion to appeal as a poor person and received by the Circuit Clerk of Howell County on August 19, 1993." This court notes, however, that not only do the docket entry and file stamp reflect September 7, 1993, as the date

the notice of appeal was filed, but the face of the document itself, signed by the same attorney who signed the amended Rule 29.15 motion, states, "DATE NOTICE FILED September 7, 1993." Further, unlike *Labrier v. Anheuser Ford, Inc.,* 621 S.W.2d 51 (Mo. banc 1981), to which defendant calls this court's attention, the record on appeal *does not reflect any action of the trial court* that disclosed the notice of appeal was received on a date other than that reflected by the file stamp and docket entry.

Defendant's Motion for Rehearing or, in the Alternative, Application for Transfer, is denied.