**STATE of Missouri, Respondent,**

v.

**Robert W. MACKIN, Appellant.**

**Robert W. MACKIN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 18351, 20574.**

Missouri Court of Appeals,
Southern District.
Division Two.

July 17, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 7, 1996.

Application to Transfer Denied
Sept. 17, 1996.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fernando Bermudez, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Appellant, tried as a prior offender and a persistent offender, §§ 558.016 and 558.019, RSMo Cum.Supp.1990, was found guilty by a jury of kidnapping, § 565.110, RSMo 1986, and armed criminal action, § 571.015, RSMo 1986. The trial court sentenced Appellant to thirty years' imprisonment for kidnapping and life imprisonment for armed criminal action, the latter sentence to run consecutively to the former. Appellant brings appeal 18351 from that judgment.

While that appeal was pending, Appellant commenced a proceeding under Rule 29.15 to vacate the judgment and sentences.[1] The motion court denied relief after an evidentiary hearing. Appellant brings appeal 20574 from the motion court's judgment.

---

1. Rule 29.15 was amended effective January 1, 1996. Under paragraph "(m)" of the new version, if sentence was pronounced prior to January 1, 1996, post-conviction relief shall continue to be governed by the provisions of Rule 29.15 in effect on the date the motion for post-conviction relief was filed or December 31, 1995, whichever is earlier. Appellant was sentenced August 25, 1992; he filed his motion for post-conviction relief December 3, 1992. Consequently, the version of Rule 29.15 in Missouri Rules of Court (1992) governs the post-conviction proceeding. References to Rule 29.15 in this opinion are to that version.

We consolidated the appeals, Rule 29.15(*l* ), but address them separately in this opinion.

### Appeal 18351

■ The first of Appellant's two points relied on pertains to this appeal. The other point pertains to appeal 20574, *infra.*

By his first point, Appellant charges the trial court with error in denying Appellant's request for a mistrial when a State's witness "testified that they visited Appellant's parole officer." Appellant maintains this testimony violated his rights to a fair trial and due process of law in that it "improperly called [his] prior convictions to the attention of the jury."

Appellant does not challenge the sufficiency of the proof to support the verdicts, hence we shall set forth only the evidence necessary to address the first point.

The crimes occurred at a park in Cassville[2] on the morning of July 8, 1991, when Appellant, armed with a "hunting knife," seized a 21–year–old woman who was sitting alone at a picnic table. With his arm around her neck, Appellant pulled the victim toward his Ford Maverick, parked nearby. The victim was struggling and screaming. She explained at trial: "I realized that if I got in that car, I ... don't think I would have got out of that car alive."

The victim "struggled away and .... twisted around." Fearing Appellant would use the knife on her, the victim grabbed the blade, suffering a cut on her left index finger.

The victim continued screaming. Appellant, apparently unnerved by the victim's courageous resistance, entered the Maverick and started the motor. The victim saw "a Kansas license plate, EXL–756," on the Maverick.

The victim fled on foot to her home, two blocks away. Her brother telephoned police.

The license number was traced to Appellant, a resident of WaKeeney, Kansas. He was arrested there by Kansas authorities three days after the crimes. At time of arrest, Appellant was driving the Maverick bearing Kansas license EXL–756.

Presenting additional evidence that Appellant was in the Cassville area at the time of the crimes, the prosecutor called Appellant's sister, Barbara Sue Russell, and her husband, Darrell, as witnesses. Darrell testified that he, Barbara, and their children resided in Collyer, Kansas, in July, 1991. They decided to come to southwest Missouri on a camping trip. They were accompanied by Appellant, who provided his Maverick for transportation.

Recounting the journey, Darrell testified that after leaving Appellant's residence in WaKeeney, they stopped in Great Bend. Then, this:

"Q. Did you stay there?

A. No. We went—Robert had to get some travel papers from his parole officer.

Q. What happened—Did you stay anywhere in southwest Missouri?

A. Yes.

Q. And what happened then? Where did you stop at in southwest Missouri?

A. When we first got to Missouri, it was dark, and we stopped up by the Petro Truck Stop on I–44."

At that point, outside the hearing of the jury, Appellant's lawyer asked for a mistrial. The transcript does not reveal the reason, apparently because some of what Appellant's lawyer said was inaudible.

The trial court ruled: "Mistrial denied. I don't think that there was any real attention being brought to it. And if we say anything more about it, it will cause us some problems.... So let's go on with the trial[.]"

The prosecutor resumed his questioning of Darrell. Appellant's parole was unmentioned the rest of the trial.

Appellant emphasizes that but for certain narrow exceptions inapplicable here, evidence that an accused committed a crime other than the one for which he is on trial is inadmissible. Appellant maintains that once Darrell Russell mentioned that Appellant had to get travel papers from his parole officer, thereby revealing to the jury that

---

**2.** The case was tried in Newton County on    change of venue.

Appellant "had prior convictions," nothing short of a mistrial could cure the error.

Appellant's use of the term "prior convictions" overstates Darrell's testimony. While the jury could infer Appellant had been convicted in the past for committing some sort of crime, nothing Darrell said indicated Appellant had more than one conviction.

We have studied the four cases cited by Appellant. None involved a situation where, as here, a State's witness, without prompting by the prosecutor, revealed the accused was on parole.

■ Unresponsive voluntary testimony indicating an accused was involved in an offense other than the one for which he is being tried does not mandate a mistrial. *State v. Varvera*, 897 S.W.2d 198, 201[10] (Mo.App. S.D.1995). In *State v. Price*, 787 S.W.2d 296 (Mo.App. W.D.1990), a prosecution witness was asked on cross-examination why he believed the accused did not have a job. The witness answered: "The parole officer came by and said he wasn't working . . . ." *Id.* at 301–02. The Western District of this Court held the trial court did not err in denying the accused's motion for mistrial. *Id.* at 302. In *State v. Sanders*, 903 S.W.2d 234 (Mo.App. E.D.1995), a prosecution witness testified on direct examination that the accused's "parole officer was calling." *Id.* at 238. The Eastern District of this Court held the trial court did not err in denying the accused's motion for mistrial. *Id.*

■ Darrell Russell's isolated reference to Appellant's parole officer in the instant case was no more egregious than the references to the accuseds' parole officers in *Price* and *Sanders*. As explained in *Price*, when a witness unexpectedly volunteers inadmissible information, the action called for rests in the trial court's discretion. 787 S.W.2d at 302. An appellate court's review is limited to determining whether the trial court abused its discretion. *Id.*

We find no abuse of discretion here. Like *Price* and *Sanders*, Darrell's reference to Appellant's parole officer was brief and identified no specific crime. The prosecutor did not exploit the remark; instead, the prosecutor quickly steered Darrell back to what was relevant, i.e., where the group went in southwest Missouri.

Furthermore, as in *Price*, 787 S.W.2d at 302, the evidence of Appellant's guilt in the instant case was strong. In addition to the evidence already recounted, Darrell and Barbara testified that Appellant was gone from the campsite overnight on July 7, 1991. Upon returning in the Maverick around noon July 8, Appellant told Darrell and Barbara he had stopped at a park in Cassville and talked to a girl, that she jumped up and began running and screaming, and that she had gotten his license plate number. Appellant said he was thinking about throwing his license plate in the river and cutting and dyeing his hair.

At Appellant's request, Darrell and Barbara drove to the Nixa police station and asked whether any law enforcement agency was looking for the Maverick. At that time, none was. Darrell and Barbara returned to the campsite, packed everything in the Maverick and, accompanied by Appellant, departed the area.

Appellant cites no case where a trial court was reversed for refusing to grant a mistrial when a witness made an unresponsive and voluntary reference to an accused's parole officer. Consistent with *Price* and *Sanders*, we hold the trial court did not abuse its discretion in denying Appellant's request for mistrial. Appellant's first point is denied.

Judgment affirmed.

### Appeal 20574

■ The evidentiary hearing in the post-conviction proceeding occurred July 22, 1993. At the conclusion of the evidence, the motion court instructed counsel for the parties:

"[U]nder Supreme Court guidelines, the Court has thirty days in which to issue findings of fact and conclusions of law. Both parties are allowed until noon, July 30th, to submit proposed findings of fact and conclusions of law. I would like to rule on this case by the 3rd of August so if you get them here by noon, I'll review them and issue findings of fact and conclu-

sions of law most likely Monday of next week [sic]."

The motion court's docket sheet shows Appellant's proposed findings of fact and conclusions of law were submitted August 2, 1993. The next day, the State submitted a document containing proposed findings of fact, conclusions of law, and an order denying relief.

On August 5, 1993, the motion court signed the document submitted by the State. The circuit clerk stamped the document "Filed" the same day.

Thereafter, the matter lay dormant more than two years. Eventually, on September 12, 1995, Appellant's lawyer sent a letter to the motion court stating: "As of this date, I have not received any findings of fact or conclusions of law for Mr. Mackin's postconviction case." The letter added: "Mr. Mackin's direct appeal is stayed, and he is concerned about the status of his case."

In response, the motion court informed Appellant's lawyer by letter of September 28, 1995: "This is to advise that the Court adopted respondents [sic] proposed findings of facts and conclusions of law and order on August 3, 1995 [sic]."

The next relevant event occurred October 18, 1995, when the motion court penned this entry on its docket sheet:

"Due to Movant's atty not being notified of 8–5–93 judgment Court is vacated [sic] 8–5–93 entry and entering judgment this date for Respondent with Court adopting Respondent's findings and conclusions of law[.]"

Appellant filed a notice of appeal in the post-conviction proceeding November 1, 1995.

█ Although the State does not question the timeliness of Appellant's notice of appeal, we must do so *sua sponte. Carr v. Missouri Delta Medical Center,* 890 S.W.2d 324[1] (Mo.App. S.D.1994); *In the Interest of K.W. v. Missouri Div. of Family Services,* 694 S.W.2d 915, 917[3] (Mo.App. E.D.1985). That is because the timely filing of a notice of appeal is a jurisdictional requirement. *Goldberg v. Mos,* 631 S.W.2d 342, 345[2] (Mo. 1982). If a notice of appeal is untimely, the appellate court is without jurisdiction to review the motion court's judgment, *Carr,* 890 S.W.2d at 324–25[2], and must dismiss the appeal. *In re Marriage of Short,* 847 S.W.2d 158, 161[1] (Mo.App. S.D.1993); *Boyer v. Shay,* 675 S.W.2d 147, 148[3] (Mo.App. E.D. 1984).

█ The procedure in the motion court was governed by the Rules of Civil Procedure insofar as applicable. Rule 29.15(a); *State v. Harris,* 870 S.W.2d 798, 815 (Mo. banc 1994), *cert. denied,* — U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). As we have seen, the motion court signed and filed findings of fact, conclusions of law, and an order denying Appellant post-conviction relief August 5, 1993. Under Rule 75.01, Missouri Rules of Civil Procedure (1993), the motion court retained control over that judgment for thirty days after entering it. *State v. Nicks,* 883 S.W.2d 65, 69–70 (Mo.App. S.D.1994). Upon expiration of that thirty-day period, Appellant had ten days in which to file his notice of appeal. Rule 81.04(a), Missouri Rules of Civil Procedure (1993); *Nicks,* 883 S.W.2d at 70. Appellant's notice of appeal, filed November 1, 1995, was more than two years late.

The failure of the clerk of the motion court to serve notice of entry of the judgment of August 5, 1993, on Appellant as required by Rule 74.03, Missouri Rules of Civil Procedure (1993), does not affect the integrity of the judgment. *Carr,* 890 S.W.2d at 326[6]. What remedy (if any) Appellant may have, at this late date, in seeking to overturn the judgment of August 5, 1993, is not an issue in this appeal.

Appeal dismissed.

PARRISH and SHRUM, JJ., concur.