Hillsborough-northern judicial district
No. 2011-624

THE STATE OF NEW HAMPSHIRE

v.

AMATO JOHN RUSSO

Argued: October 18, 2012
Opinion Issued: February 25, 2013

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

BASSETT, J. The defendant, Amato John Russo, appeals his conviction by a jury on two counts of theft by deception, *see* RSA 637:4 (1996), and two alternative counts of theft by unauthorized taking, *see* RSA 637:3 (1996). He argues that the Superior Court (*Tucker*, J.) erred in denying his motion for a mistrial and allowing standby counsel to participate in the trial. He also argues that the court erred when it imposed an extended term of imprisonment. We affirm.

The record supports the following facts. In 2004, the defendant met Rosetta Judge at a gas station in Manchester where Judge worked, and they developed a close relationship. During their relationship, the defendant expressed a desire to start a business making sausage pies. At some point, he asked Judge to borrow money from her to buy equipment for the business, and she agreed. In early 2005, the defendant accompanied Judge to Citizens Bank where she obtained a personal line of credit and gave the

defendant $4,000. Subsequently, Judge obtained two other loans and gave the money to the defendant. In total, the defendant received a little over $24,000 from Judge.

The defendant eventually admitted to Judge's son that the sausage pie business was a ruse. The defendant was charged with two counts of theft by deception and two alternate counts of theft by unauthorized taking. After a two-day trial in February 2010, at which the defendant represented himself, with standby counsel, the jury convicted him of all charges, and the court later imposed an extended term of imprisonment. *See* RSA 651:6 (2007 & Supp. 2012). This appeal followed.

## I. Denial of Mistrial Request

The defendant first argues that the trial court erred in refusing to grant a mistrial following testimony by Judge that he was on parole. Before trial, the State moved *in limine* to admit evidence of the defendant's prior convictions for theft by deception and forgery to prove his intent to commit the subject offenses. After hearing arguments, the court decided to "withhold . . . ruling on [the State's] motion . . . and . . . see how things go. . . . [R]ight now let's say no reference to the prior convictions until you get a ruling that they're admissible."

During the State's direct examination of Judge, the following exchange occurred:

> [Prosecutor:] Let me ask you. At some point, did the two of you talk about how he could raise this money or how he was going to get this money to start the business?

> [Judge:] Well, you know, he couldn't because I found out, of course — *eventually he admitted to me he was on parole.* He had no credit whatsoever, no credibility. So the only way he could get started was with me, because I have excellent credit, you know.

(Emphasis added.) The defendant immediately moved for a mistrial. The court dismissed the jury for the day and heard arguments from the parties.

The following day, the court denied the defendant's motion, but offered to give the jury a limiting instruction. The defendant rejected the offer, explaining that he believed the only remedy was a mistrial. The defendant then absented himself from the remainder of the trial. No instruction was given at that time.

At the close of evidence, the court gave the jury the following instruction:

> There was certain testimony that you may consider only for a limited purpose. Two of the indictments in the case charge the

defendant with theft by deception and allege the defendant made certain statements to Rosetta Judge that he did not believe to be true. Near the end of her first day of testimony, Rosetta Judge made a reference to the defendant telling her he was on parole. If you believe Rosetta Judge's testimony as to that statement, you may consider it only as evidence of what Rosetta Judge says the defendant told her.

The statement is not to be used by you as evidence that the defendant was in fact on parole. There was no evidence presented on whether the defendant was or was not on parole, and you should not speculate whether the defendant was or was not on parole. Whether or not a person on trial has or has not been on parole has no bearing on whether the person is guilty or not guilty.

The defendant argues that Judge's testimony regarding his parole status was improper and that it "revealed the highly prejudicial fact that [he] had a previous criminal conviction." The State disagrees that the testimony was improper. Further, the State maintains that even if the testimony was improper, it did not reveal the nature of any prior crimes committed by the defendant and, thus, it was the kind of testimony that can be adequately addressed through a jury instruction.

█A mistrial is appropriate "only if the evidence or comment complained of was not merely improper, but also so prejudicial that it constituted an irreparable injustice that cannot be cured by jury instructions." *State v. Guay*, 162 N.H. 375, 378 (2011) (quotation omitted). When reviewing a trial court's ruling on a motion for a mistrial, we

recognize that the trial court is in the best position to gauge the prejudicial nature of the conduct at issue and has broad discretion to decide whether a mistrial is appropriate. We will not overturn the trial court's decision on whether a mistrial or other remedial action is necessary absent an unsustainable exercise of discretion.

*Id.* (quotation omitted).

█ "It is well-settled that an incurable prejudice may result when the testimony of a witness conveys to a jury the fact of a defendant's prior criminal offense." *State v. Willey*, 163 N.H. 532, 538 (2012) (quotation omitted). "The infusion of such evidence into a trial is probably only equaled by a confession in its prejudicial impact upon a jury." *Id.* (quotation omitted). Accordingly, we have held that a mistrial is appropriate when "a defendant's prior criminal conduct has been unambiguously conveyed to

the jury." *State v. Kerwin*, 144 N.H. 357, 360-61 (1999) (quotation omitted). However, we have never addressed the question of whether testimony referencing a defendant's parole status can unambiguously convey to the jury a defendant's prior criminal conduct so as to require a mistrial.

In cases in which we have held that a mistrial was warranted, we have often looked to whether the jury was improperly exposed to testimony concerning prior criminal acts *similar to the acts charged*. In *Kerwin*, for instance, we held that the sexual assault victim's statement "that man raped some girl" was highly prejudicial and warranted a mistrial because the statement "unambiguously conveyed to the jury the fact that the defendant allegedly had engaged in similar culpable conduct." *Id.* at 361. Similarly, in *State v. LaBranche*, 118 N.H. 176, 177 (1978), we held that a mistrial was required where witnesses testified about a charge that had previously been filed against the defendant arising out of another instance of criminal conduct similar to the charge before the jury. *See also State v. Woodbury*, 124 N.H. 218, 221 (1983) (detective's testimony regarding identical charge which had previously been filed against the defendant required a mistrial). At the heart of these cases is a concern about the unfairness of allowing the jury to hear evidence of other crimes committed by the defendant that are similar to that for which the defendant is on trial. *See State v. Ellison*, 135 N.H. 1, 5 (1991). Notably, other courts have found that mere reference to a defendant's parole status does not convey evidence of prior criminal conduct so as to require a mistrial. *See Lanier v. State*, 702 S.E.2d 141, 144 (Ga. 2010) (holding that passing reference to parole did not place the defendant's character in evidence so as to warrant a mistrial); *State v. Mackin*, 927 S.W.2d 553, 555-56 (Mo. Ct. App. 1996) (finding that testimony by State's witness that the defendant "had to get some travel papers from his parole officer" could lead the jury to infer the defendant "had been convicted in the past for committing some sort of crime," but did not require a mistrial).

█ Assuming, without deciding, that Judge's testimony that the defendant stated to her that he was on parole was improper, we hold that this testimony did not unambiguously convey the defendant's prior criminal conduct to the jury. *Cf. Willey*, 163 N.H. at 538 (holding that trooper's testimony regarding an unrelated investigation involving the victim's half-sisters "was not specific and did not clearly convey criminal conduct by the defendant"). Unlike in *Kerwin, LaBranche*, and *Woodbury*, Judge's reference to parole did not improperly expose the jury to testimony concerning prior criminal acts similar to the acts charged. Indeed, the testimony did not identify *any* specific prior charge or conviction. Rather, Judge's testimony in this case was more akin to the testimony in *Mackin*,

where the Missouri Appeals Court found that the witness's "isolated reference" to the defendant's parole officer "was brief and identified no specific crime" and did not warrant a mistrial. *Mackin*, 927 S.W.2d at 556. Thus, we conclude that Judge's testimony regarding the defendant's parole status was not so prejudicial as to constitute an irreparable injustice.

█ █ Moreover, the trial court's limiting instruction at the close of evidence eliminated any prejudice that might have been caused by Judge's testimony. The court instructed the jury to consider the testimony only as evidence of what Judge said that the defendant told her, and not as evidence that the defendant was in fact on parole. The court informed the jury that no evidence was presented as to the issue of whether the defendant was or was not on parole. The jurors were also instructed that they should not speculate as to the defendant's parole status. Juries are presumed to follow instructions. *Cf. Willey*, 163 N.H. at 539 (finding that jury presumed to follow trial court's curative instruction to disregard trooper's answer regarding an unrelated investigation and focus only on the allegations in the case before it); *State v. Warren*, 588 N.E.2d 905, 912 (Ohio Ct. App. 1990) (noting that "[t]here is a presumption regarding the efficacy of curative instructions" in case where witness made reference to the defendant's parole officer and court immediately rendered a curative instruction). Further, we are not persuaded by the defendant's argument that the timing of the instruction served to draw undue attention to the testimony. Because the trial court is in the best position to gauge prejudicial impact, it has broad discretion to fashion the appropriate remedial action. *Willey*, 163 N.H. at 539. Given that the testimony did not reveal any specifics regarding the defendant's prior criminal conduct, and that the trial court provided a limiting instruction at the close of evidence, we conclude that the court properly exercised its discretion when it denied the defendant's motion for a mistrial.

In light of our holding that Judge's testimony did not unambiguously convey the defendant's prior criminal conduct to the jury, and given the limiting instruction provided by the trial court, we need not address the defendant's other challenges to the trial court's denial of his request for a mistrial.

## II. Right to Self-Representation and Standby Counsel

The defendant next argues that standby counsel's limited participation in the trial violated his right of self-representation under the State and Federal Constitutions. We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

On the first day of trial, the defendant elected to represent himself with the understanding that his former counsel would serve as standby counsel. Subsequently, after the court denied his request for a mistrial, the defendant chose to absent himself from the remainder of the trial. Before leaving the courtroom, he made clear that he did not want standby counsel to represent him in his absence.

At the close of the State's case, the court asked standby counsel whether the defendant wanted to present any evidence or participate in a conference regarding jury instructions. Standby counsel informed the court that the defendant declined to do either. The court then held a conference on jury instructions at which standby counsel was present. The court explained that it had inserted a limiting instruction to address Judge's testimony relating to parole. The court acknowledged the defendant's earlier objection to the limiting instruction but stated that it was going to give such an instruction "over his objection." The court reviewed the language of the instruction with the prosecutor. Thereafter, while noting that standby counsel could not "speak for" the defendant, the court asked standby counsel whether he had "any thoughts." Standby counsel briefly commented on the language of the instruction, indicating that he thought it was "a good idea" to include that "there was no evidence presented on whether the defendant was or was not on parole" and that the jury should not speculate as to the defendant's parole status. After giving the instructions to the jury, the court called counsel to the bench and inquired whether they had any objections, and, outside of the hearing of the jury, standby counsel briefly commented to the judge regarding the wording of the instructions.

The following day, after several hours of deliberations, the jury informed the court that it did not think it could reach a unanimous verdict on any of the charges. The court informed the defendant, and he once more indicated that he did not wish to participate. The court brought the jury into the courtroom, questioned the foreperson, and subsequently called both counsel to the bench. The court noted that standby counsel could not "make a motion" for a mistrial and sought the State's position as to whether the court should declare a mistrial. After some discussion, the court and the prosecutor agreed to give a deadlock jury instruction. Standby counsel stated that giving the instruction "ma[de] sense." The court told the jury that it had "discussed the issue with the attorneys" and then gave the deadlock jury instruction. The following day, the jury found the defendant guilty on all four charges.

■ Under Part I, Article 15 of the New Hampshire Constitution and the Sixth Amendment to the United States Constitution, a criminal defendant is guaranteed the right of self-representation as well as the right to counsel.

*State v. Ayer*, 150 N.H. 14, 25 (2003). Because these fundamental rights are antithetical, the exercise of one right nullifies the other. *Id.* When a defendant "clearly and unequivocally" waives his right to counsel by exercising his right to represent himself in a timely manner, and his waiver is "knowingly and intelligently made," the exercise of the right of self-representation must be scrupulously respected through all critical stages of his criminal prosecution and cannot be revoked without affirmative action by the defendant to rescind his waiver and to exercise his right to counsel. *Id.* at 26 (quotations and citations omitted). Nonetheless, standby counsel may be appointed, even over objection of the defendant, "to aid the [defendant] if and when the [defendant] requests help, and to be available to represent the [defendant] in the event that termination of the defendant's self-representation is necessary." *Faretta v. California*, 422 U.S. 806, 835 n.46 (1975).

In *McKaskle v. Wiggins*, 465 U.S. 168, 177-79 (1984), the Supreme Court addressed the extent of standby counsel's proper participation when a defendant exercises his right of self-representation. *See Ayer*, 150 N.H. at 27. The Court explained that a defendant's right to self-representation encompasses the right "to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial." *McKaskle*, 465 U.S. at 174. The Court ruled that, in determining whether a defendant's right to self-representation has "been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id.* at 177.

Recognizing that "the objectives underlying the right [of self-representation] may be undermined by unsolicited and excessively intrusive participation by standby counsel," the Court "impose[d] some limits on the extent of standby counsel's unsolicited participation." *Id.* "First, the [self-represented] defendant is entitled to preserve actual control over the case he chooses to present to the jury." *Id.* at 178. Indeed, "[t]his is the core of the [right of self-representation]." *Id.* Erosion of this right occurs if counsel, over the defendant's objection, interferes with any significant tactical decision of the defense, including the control over the questioning of witnesses, or if counsel speaks "*instead* of the defendant on any matter of importance." *Ayer*, 150 N.H. at 27 (quotation omitted). "Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *McKaskle*, 465 U.S. at 178. The Court noted that "excessive involvement by counsel [in the presence of the jury] will destroy the appearance that the defendant is" representing himself. *Id.* at 181.

Nonetheless, the Court made clear "that a categorical bar on participation by standby counsel in the presence of the jury is unnecessary." *Id.* at 182.

■ ■ In this case, the defendant argues that standby counsel's participation at trial violated the limits set out in *McKaskle*. He first contends that standby counsel "interfered with a significant tactical decision of the defense" by assenting to the limiting instruction regarding parole. We disagree. It is clear that the court intended to give the limiting instruction regarding the parole issue despite the defendant's previously stated objection and asked for standby counsel's thoughts only *after* it had decided to give the instruction. Standby counsel did not request the instruction. Rather, he merely stated his opinion that certain language in the instruction was "a good idea." As noted in *McKaskle*, there is "no absolute bar on standby counsel's unsolicited participation." *Id.* at 176. The right of self-representation "exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense"; however, "these objectives can be achieved without categorically silencing standby counsel." *Id.* at 176-77. Here, the defendant maintained control over his defense. He was given the opportunity to participate in the conference on jury instructions and chose not to do so. *See id.* at 181 (finding that counsel's participation did not interfere with the defendant's control over the case where the defendant "was given ample opportunity to present his own position to the court"). Accordingly, we conclude that standby counsel did not "substantially interfere with any significant tactical decisions, or . . . speak *instead* of the defendant on any matter of importance." *Id.* at 178.

■ The defendant next argues that standby counsel's participation in sidebar conferences in the presence of the jury gave "the impression that [standby counsel] had resumed responsibility for managing the defense." Assuming, without deciding, that this issue was properly preserved, we do not find that standby counsel's participation in sidebar conferences "destroy[ed] the jury's perception that the defendant [wa]s representing himself." *Id.*

The record reflects that, at the start of trial, the court informed the jury that the defendant would be representing himself. The court further explained that the defendant's former counsel would serve as standby counsel and consult with the defendant as needed. During trial, the defendant presented an opening statement and cross-examined two witnesses for the prosecution. When the defendant decided to absent himself from the courtroom, the court informed the jury that "[j]ust as the defendant has a right to represent himself at trial, the defendant also has a right to give up his right to be present at his trial." The court reiterated

this information in its closing charge to the jury, stating that "[t]he defendant's decisions to proceed without an attorney and not to attend a portion of the trial have no bearing on whether he is guilty or not guilty. You are not to draw any inference unfavorable to the defendant from the exercise of these rights."

Furthermore, standby counsel questioned no witnesses and did not make a closing argument. Rather, standby counsel's only active participation in the presence of the jury was limited to the two sidebar conferences. By their nature, these conferences were conducted outside the hearing of the jury. *See* BLACK'S LAW DICTIONARY 1507 (9th ed. 2009) (defining "sidebar conference" in relevant part as "[a] discussion among the judge and counsel . . . outside the jury's hearing"). Given the limited extent of participation here, we conclude that no violation occurred.

Nor can we say that the court's comment to the jury that it had "discussed the issue with the attorneys" confused the jury's "perception that the defendant was representing himself." *Ayer*, 150 N.H. at 28. The trial court neither told the jury that standby counsel supported the instruction nor suggested that standby counsel spoke for the defendant. Indeed, the court explained to the jury on three separate occasions that the defendant had the right to represent himself. Given standby counsel's minimal involvement in the presence of the jury, the court's comment fell short of infringing on the defendant's right of self-representation. *Cf. McKaskle*, 465 U.S. at 185-86 (finding standby counsel's unsolicited comments in front of the jury did not erode the defendant's self-represented appearance before the jury in part because they were "infrequent and for the most part innocuous" and the court explained at the outset of trial that the defendant would be representing himself).

The defendant cites *Snowden v. State*, 672 A.2d 1017 (Del. 1996), in support of his argument that standby counsel's participation in the sidebar conferences violated his right of self-representation. In *Snowden*, the Delaware Supreme Court held that the trial court's exclusion of the self-represented defendant from sidebar conferences, in which standby counsel participated, constituted a denial of his right of self-representation. *Snowden*, 672 A.2d at 1022. Here, however, the defendant was not denied the opportunity to participate in sidebar conferences. Rather, he chose to absent himself from trial. Thus, *Snowden* is inapposite.

As the Federal Constitution offers the defendant no greater protection than the State Constitution does under these circumstances, *see Ayer*, 150 N.H. at 30; *McKaskle*, 465 U.S. at 177-79, we reach the same result under the Federal Constitution as we do under the State Constitution.

*III. Extended Prison Sentence*

Finally, the defendant argues that the trial court erred in finding him eligible for an extended term of imprisonment pursuant to RSA 651:6. Under RSA 651:6, II(a) (2007), "[a] convicted person may be sentenced [to an extended term of imprisonment] if the court finds, and includes such findings in the record, that such person . . . [h]as twice previously been convicted in this state, or in another jurisdiction, on sentences in excess of one year." RSA 651:6, III (Supp. 2012) provides, in relevant part, that "[i]f authorized by paragraph I or II, and if written notice of the possible application of this section is given the defendant at least 21 days prior to the commencement of jury selection for his or her trial, a defendant may be sentenced to an extended term of imprisonment."

Here, on two occasions, in March 2007 and again in January 2008, the State filed a pretrial notice of its intent to seek an extended term of imprisonment based upon two prior convictions that had resulted in sentences in excess of one year. The notices did not specify the prior convictions upon which the State intended to rely. At the sentencing hearing on January 13, 2011, the State identified three prior convictions as the basis for seeking an extended term: (1) a five-to-ten year stand committed sentence imposed in 1999, which stemmed from a 1998 conviction; (2) a five-to-ten year suspended sentence, which resulted from a separate 1998 conviction, two years of which were imposed in 2009; and (3) a 2009 conviction for which the defendant received a sentence of more than one year.

The defendant argues that the trial court erred in imposing an extended term of imprisonment under RSA 651:6, II(a) because, at the time the State filed its notices, he "had been imprisoned only once on a sentence in excess of a year." A similar argument was put forward by the defendant in *State v. Hammell*, 147 N.H. 313 (2001), under a former version of the statute. In *Hammell*, the defendant argued that the trial court erred by applying the extended term statute because one of the two prior prison sentences the court relied upon had not been imposed until after his arrest in the pending matter. *Hammell*, 147 N.H. at 322. We disagreed. *Id.* We found that there was nothing in the plain language of the statute or the statutory scheme to indicate that the phrase in the former statute "previously been imprisoned" meant imprisonment prior to the date of the commission of the subject offense. *Id.* Rather, we interpreted the former statute as requiring that, *at the time of sentencing*, the court find: two prior convictions, each resulting in imprisonment on a sentence in excess of one year. *Id.*

 In 2003, the legislature amended RSA 651:6 to bring it into compliance with the United States Supreme Court's decision in *Apprendi*

*v. New Jersey*, 530 U.S. 466 (2000). *State v. Dansereau*, 157 N.H. 596, 600 (2008). In doing so, it replaced the word "imprisoned" with "convicted" so that RSA 651:6, II(a) now provides that a court may impose an extended term of imprisonment if the court finds that the defendant "has twice previously been convicted . . . on sentences in excess of one year." *Id.* (quoting current version of RSA 651:6, II(a)). We examined the legislative history of these amendments in *Dansereau* and found that the legislature's replacement of "imprisoned" with "convicted" was intended solely to ensure that the provision comported with the holding in *Apprendi* regarding the circumstances in which a court, rather than a jury, could impose a term of imprisonment beyond the statutory maximum, and not to effect a substantive change to the prior statutory scheme. *Id.* at 601-02. Accordingly, since 2003, we have continued to interpret the statute as requiring the court to make two findings before it imposes an extended term of imprisonment under this section: (1) that the defendant was previously *imprisoned* twice, resulting from (2) sentences in excess of one year. *Matton*, 163 N.H. at 414; *Dansereau*, 157 N.H. at 599.

 In this case, at the time the State filed its notices, the defendant had twice previously been convicted and·sentenced in excess of one year but he had been imprisoned only once. However, prior to his sentencing, the defendant's prior suspended sentence had been imposed, resulting in a second term of imprisonment in excess of one year. Thus, the trial court did not err in finding that the statutory requirements were satisfied in that the defendant was twice previously imprisoned resulting from sentences in excess of one year.

The defendant further argues that the trial court erred in imposing an extended term of imprisonment because the State's notices failed to specify the prior convictions upon which it intended to rely. He contends that notice of the specific prior convictions must be given "to allow the defendant to prepare to refute the allegation of qualifying prior convictions" and to ensure "that the defendant be fully notified, before making decisions about whether to plead guilty or go to trial, of the possible consequences of his actions."

 We have previously said that the objective to be served by the pretrial notice is to "give the defendant an opportunity to offer evidence to refute the findings required by the statute." *State v. Coppola*, 130 N.H. 148, 155 (1987) (quotation and ellipsis omitted) (decided under former statute). However, the failure of a prosecutor to specify in the pretrial notice the particular grounds upon which it would rely for requesting extended term sentencing will not render the extended term sentencing statute inapplicable unless the defendant can show actual prejudice. *Id.*

■ Here, there is no evidence that the defendant suffered any prejudice from the State's failure to specify which prior convictions it intended to rely upon. *Cf. State v. Hurlburt*, 135 N.H. 143, 148-49 (1991) (finding, under former statute, that defendant suffered no prejudice where State notified him prior to his first trial of its intent to seek extended sentencing and he had ample opportunity to refute State's evidence and arguments as to why extended sentencing was warranted). The defendant makes no argument that he was not fully informed of the possible consequences of his decision to go to trial as a result of the State's failure to notify him, prior to trial, of the specific convictions upon which it intended to rely. Indeed, he does not dispute the fact that, at the time the State filed its notices, he had been convicted on two of the three convictions upon which the State relied at sentencing. Moreover, as of 2009, the defendant had been imprisoned on at least two sentences in excess of one year. Thus, well in advance of his February 2010 trial, he had the opportunity to weigh the possible consequences of pleading guilty or going to trial. Further, the defendant does not argue that the State's failure to specify the prior convictions in its notices deprived him of the opportunity to offer evidence at sentencing to refute the findings required by the statute. *See Coppola*, 130 N.H. at 155. Accordingly, the trial court did not err in finding the defendant eligible for an extended term of imprisonment.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.