# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2014-0364, <u>State of New Hampshire v. William Roy</u>, the court on September 17, 2015, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. Following a jury trial in Superior Court (<u>MacLeod</u>, J.), the defendant, William Roy, was convicted on two counts of forgery arising out of his fraudulent issuance of checks on his ex-wife's account. <u>See</u> RSA 638:1, I, III (2007). On appeal, the defendant argues that the trial court erred by: (1) refusing to admit into evidence the terms of the divorce decree between the defendant and his ex-wife, Mary Anne Holland; and (2) failing to declare a mistrial after Holland testified that the defendant was "on the lam." He also argues that the trial court violated his right to travel under the New Hampshire and United States Constitutions when it required him to reside in New Hampshire as a condition of his suspended sentence. We affirm.

The record establishes the following facts. The defendant and Holland divorced in 2011. In 2013, a neighbor reported to the police that she had found a man — later identified as the defendant — in Holland's apartment. Holland had not given the defendant permission to be in her apartment and did not know that he had been there. The police obtained a search warrant for the defendant's bank account and discovered that the defendant had deposited two checks in his account that appeared to have been signed by Holland. Holland denied that she had written the checks or authorized the defendant to write them on her behalf. She later found that there were checks missing from the checkbook she kept in her apartment.

A grand jury indicted the defendant on one count of burglary and two counts of forgery. RSA 635:1 (2007) (amended 2014); RSA 638:1, I, III. Following a jury trial, the defendant was acquitted of the burglary charge and convicted of the forgery charges. The trial court sentenced him on one charge to two-and-one-half to five years stand committed, and on the other, to three-and-one-half to seven years, suspended for ten years from the date of his release from incarceration on the first charge. This appeal followed.

I. Exclusion of Evidence of the Terms of the Divorce Decree

The defendant first argues that the trial court erred by excluding evidence of his decree of divorce from Holland. Before trial, the State filed a

motion in limine to exclude "reference [to] or evidence [of the] divorce decree . . . requiring [Holland] to pay funds to the Defendant." The trial court granted the State's motion, in part, excluding the decree itself and reference to the divorce proceeding, but allowing the defendant to present evidence that he and Holland were divorced, and that the defendant believed that Holland owed him money.

The trial court explained that, under New Hampshire Rule of Evidence 403, the probative value of the specific terms of the divorce decree was substantially outweighed by the danger of confusing the issues and misleading the jury. The trial court reasoned that, because the divorce decree "represent[ed] a negotiated property division between the defendant and [Holland], which [had] never been enforced or further litigated" after the decree was issued in 2011, it would only confuse the jury as to whether Holland owed the defendant money at the time that he forged the checks in 2013. The trial court also observed that admitting evidence of the terms of the divorce could have led to a trial within a trial as to the equities of the divorce.

On appeal, the defendant argues that "evidence of the [divorce] decree and of the existence of an outstanding balance" had significant probative value because it bolstered the credibility of his claim that Holland owed him money and authorized him to write the checks. The State counters that the terms of the divorce decree — issued in 2011 — had no tendency to show that Holland owed the defendant money at the time that he forged the checks in 2013. The State also contends that admitting evidence of the terms of the decree would have created a trial within a trial as to the equities of the divorce, thus misleading and confusing the jury.

We accord considerable deference to a trial court's evidentiary rulings and will intervene only when they demonstrate an unsustainable exercise of discretion. State v. Pelletier, 149 N.H. 243, 249 (2003). In determining whether a ruling is a proper exercise of discretion, we will consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made. State v. Costella, 166 N.H. 705, 714 (2014). The defendant bears the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401. Rule 403 provides, however, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." N.H. R. Ev. 403.

We cannot say that the trial court's decision to exclude evidence of the terms of the divorce decree was clearly untenable or unreasonable to the prejudice of the defendant's case. We agree with the trial court that the terms of the divorce decree cannot show whether Holland paid all sums that she was ordered to pay, or whether she still owed the defendant money at the time that he forged her checks. The decree provided that Holland would pay the defendant $115,000, of which $64,000 had been paid prior to the issuance of the decree, with the remaining $51,000 payable upon the issuance of the final decree of divorce in June 2011. Thus, although the terms of the decree establish the amount Holland was obligated to pay the defendant, they cannot show whether Holland actually paid the full amount she owed.

Further, evidence of the specific terms of the divorce decree was not necessary to prove that the defendant believed that Holland owed him money at the time that he forged her checks. The trial court allowed the defendant to testify that he believed that Holland owed him money and had authorized him to write checks on her account. Given the defendant's ability to provide the jury with this information, we agree with the trial court that admitting evidence of the original circumstances giving rise to the debt may have resulted in a trial within a trial, which could have confused the jury. See State v. Weeks, 140 N.H. 463, 467 (1995). Accordingly, we conclude that the trial court sustainably exercised its discretion when it granted the State's motion in limine to exclude evidence of the divorce decree.

The defendant next argues that, even if evidence of the divorce decree was properly excluded by the trial court's ruling before trial, Holland's testimony "opened the door" and made admissible evidence of Holland's debt to him pursuant to the divorce decree. At trial, Holland testified that she had paid the defendant money "for the divorce" and had not agreed to pay him anything more. The defendant objected, arguing that Holland's testimony created the misleading impression that she had paid the defendant everything that she owed him under the divorce decree, and did not owe him money at the time that he forged the checks. The defendant requested that he be allowed to impeach Holland's testimony by cross-examining her about the specifics of the divorce decree. The trial court denied his request. Nonetheless, the trial court allowed the defendant to cross-examine Holland as to whether she had "pa[id] him everything under the divorce decree that [she was] ordered to pay." The defendant chose not to do so.

The defendant argues that the trial court erred by not allowing him to introduce evidence of the divorce decree to correct the misleading impression created by Holland's testimony that she had paid everything she owed under the divorce decree. The State counters that Holland's testimony did not mislead the jury and, therefore, it did not open the door. The State asserts that, even if a misimpression were created, the terms of the divorce decree would not correct it because they do not provide evidence of whether Holland

owed the defendant money at the time that he forged her checks.  We agree with the State.

The "opening-the-door" doctrine allows a party to use previously suppressed or otherwise inadmissible evidence to counter a misleading advantage created by the opponent.  State v. Carlson, 146 N.H. 52, 56 (2001).  "The rule thus prevents a party from successfully excluding evidence favorable to his opponent and then selectively introducing this evidence for his own advantage, without allowing the opponent to place the evidence in proper context."  State v. Morrill, 154 N.H. 547, 550 (2006).  However, for the doctrine to apply, "[t]he initial evidence must have reasonably created a misimpression or misled the fact-finder in some way."  Id.  "The trial court is in the best position to gauge the prejudicial impact of particular testimony."  Carlson, 146 N.H. at 56.  Therefore, we will not upset a trial court's ruling as to whether the defendant opened the door to otherwise inadmissible evidence absent an unsustainable exercise of discretion.  Id.

Here, even assuming that Holland's testimony that she "paid [the defendant] money for the divorce" and did not "agree to pay [the defendant] any more money" created a misleading impression, that impression would not have been directly countered by the admission of the previously excluded terms of the divorce decree.  See Morrill, 154 N.H. at 549-50.  As the trial court observed, the terms of the divorce decree would not prove whether Holland had paid everything under the terms of the decree or whether she owed the defendant money at the time that he forged her checks.  Rather, they would show only what was owed in 2011 when the final decree was issued.  Accordingly, we conclude that the trial court sustainably exercised its discretion when it ruled that Holland's testimony did not warrant the admission of the previously excluded divorce decree.

The defendant also argues that the exclusion of evidence of the terms of the divorce decree implicates his right to present all proofs favorable under the New Hampshire and United States Constitutions.  See N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI.  However, that argument is not sufficiently developed for our review; accordingly, we decline to address it.  See, State v. Ayer, 157 N.H. 500, 513 (2007).

## II.  The Defendant's Request for a Mistrial

The defendant next argues that the trial court erred when it denied his request for a mistrial.  During trial, Holland testified that the defendant was "on the lam."  The defendant objected, arguing that Holland's testimony was highly prejudicial because it implied that the defendant was running from the law and revealed his criminal history.  He requested a mistrial or, in the alternative, a curative instruction.  The trial court denied the request for a mistrial without prejudice, and instructed the jury as follows: "[B]oth the

question and the answer are stricken from the record. They are not evidence in this case and you are not to consider the answer or the question in any way in your deliberations. It is not evidence. You are to disregard it completely."

On appeal, the defendant argues that Holland's statement was highly prejudicial because it conveyed that he had a criminal history. The State counters that the statement did not unambiguously convey the defendant's prior criminal conduct to the jury, and, thus, was not so prejudicial as to warrant a mistrial. The State also argues that any prejudice that might have been created by the testimony was eliminated by the trial court's instruction. We agree with the State.

We will not overturn the trial court's decision as to whether a mistrial is necessary absent an unsustainable exercise of discretion. State v. Russo, 164 N.H. 585, 589 (2013). It is well-settled that an incurable prejudice may result when the testimony of a witness conveys to a jury the fact of a defendant's prior criminal offense. Id. Accordingly, we have held that a mistrial is warranted when a defendant's prior criminal conduct has been unambiguously conveyed to the jury. Id. at 589-90.

Here, Holland's testimony did not refer to a specific crime, and no other references to the defendant's criminal history were made. See id. at 590 (finding single reference to defendant's parole status did not unambiguously convey defendant's prior criminal conduct because it did not identify a specific crime). Holland's testimony that the defendant was "on the lam" did not, therefore, unambiguously convey to the jury the defendant's prior criminal conduct.

Moreover, to the extent that Holland's testimony did convey to the jury that the defendant has a criminal history, any prejudice caused was cured by the trial court's instruction to the jury that the testimony was to be completely disregarded. See id. at 591. Juries are presumed to follow instructions. Id. Accordingly, we conclude that the trial court's denial of the defendant's request for a mistrial was a sustainable exercise of discretion.

III. The Condition on the Defendant's Suspended Sentence

Finally, the defendant argues that the trial court violated his constitutional right to travel when it imposed a condition on his suspended sentence requiring him to reside in New Hampshire. At the sentencing hearing, the State requested that the trial court suspend the sentence on the defendant's second forgery conviction upon compliance with a number of conditions, including that the defendant reside in New Hampshire for the entire period of time during which the suspended sentence could be imposed. The defendant objected, arguing that such a condition would violate his "constitutional right to travel." The trial court disagreed, and suspended the

5

sentence on the defendant's second conviction subject to the condition that he reside in New Hampshire.

On appeal, the defendant argues that the condition on his suspended sentence requiring him to reside in New Hampshire is unreasonable and overbroad, and, therefore, violates his right to travel under the New Hampshire Constitution and the United States Constitution. See N.H. CONST. pt. I, art. 1, 2; U.S. CONST. amend. XIV, § 1. The State counters that the defendant did not properly preserve his state constitutional argument. The State also argues that the condition is valid under the Federal Constitution because it is reasonably related to the goals of sentencing.

"To preserve a state constitutional claim, the defendant must: (1) raise it in the trial court; and (2) specifically invoke a provision of the State Constitution in his brief." State v. Lamarche, 157 N.H. 337, 340 (2008). Although, during the sentencing hearing, the defendant asserted that the condition would "interfere with certain Constitutional rights" and would violate his "constitutional right to travel," he never specifically asserted a state constitutional claim or argued that the State Constitution is more protective as to this issue than is the Federal Constitution. Thus, we limit our analysis to the defendant's federal constitutional claim. See id. A constitutional claim presents an issue of law, which we review de novo. See State v. Arsenault, 153 N.H. 413, 415 (2006).

"The right of every citizen to live where he chooses and to travel freely not only within the state but across its borders is a fundamental right which is guaranteed both by our own and the Federal Constitutions." Donnelly v. Manchester, 111 N.H. 50, 51 (1971). However, "not every restriction of a right classified as fundamental incurs 'strict' scrutiny." Bleiler v. Chief, Dover Police Dep't, 155 N.H. 693, 697 (2007) (brackets and quotation omitted). Rather, in cases involving the fundamental right to travel, "[t]he United States Supreme Court . . . has engaged in an ad hoc balancing of the individual's liberty interest against the demands of an organized society." Id. at 698 (quotations omitted).

Here, the defendant's right to travel was restricted by the condition of his suspended sentence. We review a federal constitutional challenge to a condition of a sentence that limits a fundamental right — including the right to travel — to determine whether it is "reasonably related to the goals of deterrence, protection of the public, or rehabilitation of the offender, taking into account the offender's history and personal characteristics, and involve[s] no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release." United States v. Watson, 582 F.3d 974, 982 (9th Cir. 2009) (quotation omitted); see, e.g., State v. Perfetto, 160 N.H. 675, 678 (2010) ("[A] court will not strike down conditions of release, even if they implicate fundamental rights, if such conditions are reasonably related to the ends of

rehabilitation and protection of the public from recidivism." (quotation omitted)).

Here, the trial court found that the defendant had engaged in a "serious and disturbing" course of criminal conduct for many years, had "a long history of disregard for the law," and was "in need of significant supervision." The trial court explained that it imposed the condition because "[p]revious rehabilitation and deterrent efforts have had dubious results, at best," and "a course of incentive[s to] conduct himself as a law abiding citizen upon his release is essential to encourage his commitment to rehabilitation going forward and to protecting the community."

We conclude that the condition is reasonably related to the goals of deterrence and protecting the public because keeping the defendant in New Hampshire — where New Hampshire authorities can more easily supervise him — aids in "alleviat[ing] the danger to society posed by the possibility that [the defendant] might repeat similar offenses." United States v. Beech-Nut Nutrition Corp., 925 F.2d 604, 608 (2d Cir. 1991). Further, the condition is reasonably related to the goal of rehabilitation because it "reinforc[es the defendant's] perception that misdeeds do result in constraints on freedom," and thereby incentivizes the defendant to conduct himself as a law abiding citizen. Id.

Moreover, the condition involves no greater deprivation of liberty than is necessary and is not absolute. See Watson, 582 F.3d at 984-85 (upholding probation condition barring convict from entering San Francisco because he could still travel elsewhere or seek permission to enter the city). The defendant is required only to reside in New Hampshire. He is able to travel outside of New Hampshire, and he is free to live wherever he wishes within New Hampshire. Thus, his right to travel has not been unduly restricted; he may still exercise his right in ways that do not violate the condition of his suspended sentence.

Accordingly, because the condition of the suspended sentence, requiring the defendant to reside in New Hampshire, is reasonably related to goals of deterrence, protection of the public, and rehabilitation, and is no broader than necessary to achieve those goals, the condition does not violate the defendant's right to travel under the Federal Constitution. See id.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,
Clerk**

7