Carroll
No. 91-262

### THE STATE OF NEW HAMPSHIRE

v.

### WILLIAM J. WADE

March 25, 1993

*John P. Arnold*, attorney general (*Gregory W. Swope*, assistant attorney general, on the brief, and *Amy Vorenberg*, assistant attorney general, orally), for the State.

*Timothy M. Landry*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   The defendant was convicted of aggravated felonious sexual assault, RSA 632-A:2, XI, following a jury trial in Superior Court (*Mohl*, J.) upon an indictment alleging penile penetration of the defendant's daughter who was under the age of thirteen years. The time frame of the occurrence was, according to the indictment, between November 1, 1989, and August 1, 1990. The conviction is appealed on the claim of trial court error in admitting evidence under the medical treatment hearsay exception, New Hampshire Rule of Evidence 803(4), as well as insufficiency of evidence to support a jury finding of penile penetration. For the following reasons, we reverse.

The first claim of error raises fundamental concerns about the role of Rule 803(4) in the prosecution of child sex abuse cases such as the one at hand. The rule provides an exception to the rule against hearsay and rests in substantial part upon a common law recognition of almost universal acceptance that there is a guarantee of trustworthiness in statements made to a provider of medical services in anticipation of treatment. It excepts from the proscription against hearsay

> "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances indicating their trustworthiness."

N.H. R. Ev. 803(4).

This court has viewed the rule in the context of a child declarant on one prior occasion. In *State v. Woods*, 130 N.H. 721, 546 A.2d 1073 (1988), the mother of an alleged child sex abuse victim took the seven-year-old child to be examined by a doctor to determine whether the child was "telling the truth" about her encounters with the defendant. *Id.* at 729, 546 A.2d at 1078. We construed the rule narrowly and held that the hearsay had been improperly admitted.

Determinations of the applicability of hearsay exceptions cannot be made in the abstract and must be viewed against the particular facts of each case, and in *Woods* we found the essential prong of treatment or diagnosis missing from the equation. A review of the facts in the present case is essential for our discussion.

At the time of the alleged offense the victim was four or five years old. The time frame set forth in the indictment encompasses the victim's fifth birthday. Her parents were divorced and her mother was the custodial parent. Her father, the defendant, was permitted rights of visitation, which on overnight occasions took place at the residence of the defendant's parents. After such a visit or visits in November 1989, the mother noticed a change in the child's behavior pattern, finding her "closed in," uncommunicative and having difficulty sleeping at night. On one occasion the child was observed rubbing a doll "on her private area." The child also on at least one occasion complained of pain in her genital area. The changes in the child's conduct continued through November, December and early January. The child's mother was the niece of a deputy sheriff to whom she confided her concerns about the possibility of sexual molestation as the reason underlying the changes in attitudes and behavior. The deputy, in turn, took the matter up with Brian Collins, an acquaintance, who was a juvenile officer and detective in the employ of the Conway Police Department. Detective Collins initiated contact with the child's mother, which resulted in office conferences with both the mother and child and a suggested referral to the family doctor.

The visit to the family doctor resulted in a further referral to Dr. Thomas Jenkins Packard, a pediatrician who examined the child on February 23 after having received a copy of Detective Collins' investigative report. The medical history given by the child in substance related the facts that she was made to take showers with her father, that he placed his fingers in her genital opening, that he moved his penis around her genital area and that he put a knife "up inside" and some blood dropped from her genital area. The examination revealed an intact hymen with puffiness and swelling at the rim, which Dr. Packard testified could have been self-inflicted. The doctor observed "some vertical linear scar tissue extending from the inferior aspect of the hymen into the posterior fourchette." The measurements of the hymen were normal. The doctor testified that "most likely" the child had been abused. Dr. Packard referred the child to Dr. Marianne Jackson, a gynecologist, who examined the child on March 22. In the history given to Dr. Jackson, the child said she was there

because "Daddy Billy had hurt her" and rubbed his penis in her perineal area. She recalled having pain but did not have any at the time of the examination. Dr. Jackson testified that she found nothing abnormal in the child and could not come up with any conclusions as a result of her medical examination. The following colloquy occurred on cross-examination of the doctor:

> Q. You were not able to find anything that would substantiate any allegations of sexual penetration?
>
> A. The—my statement, I guess, holds. I couldn't refute or corroborate the statements that were made."

In this case, the child victim testified at trial and repeatedly asserted in direct examination that the defendant "rubbed [her] private" with just his hand, making no reference to any conduct indicative of penile penetration. It is also noteworthy that there were no follow-up visits to any of the three doctors nor was there evidence in the case indicating the rendering of advice or treatment for the observed conditions of the child.

The extent and nature of Dr. Jackson's examination and medical history was canvassed by counsel at a hearing on a motion *in limine* prior to trial, and the court ruled that the purpose of the interview "was, among others, for medical diagnosis and treatment, to the extent any treatment was called for." The court further ruled that "the circumstances under which she conducted her examination of this child were done under circumstances that indicate that the statements made by the child would be trustworthy . . . ." The hearsay was thus admitted into evidence. A similar ruling was made with respect to the medical history given to Dr. Packard, as the court noted:

> "I do believe this falls within 803(4), as this is taking a medical history. The doctor has testified what his purposes were, and that he had concerns with respect to the safety of the child and, based on the examinations so far, I would find that the sort of context in which the medical history was taken is—or I should say presents a sufficient indicia of trustworthiness that the testimony should be permitted under 803(4)."

The hearsay of the child was likewise permitted from Dr. Packard.

The myriad problems attending cases such as this from an evidentiary standpoint were well articulated in clear language by Lewis F. Powell, Jr., Associate Justice of the United States Supreme Court

(Retired), sitting by designation on the Court of Appeals for the Fourth Circuit, in his separate opinion in *Morgan v. Foretich*, 846 F.2d 941, 950 (4th Cir. 1988), concurring in part and dissenting in part. Although the context of Justice Powell's remarks was a civil case in which the child did not testify, the rules of evidence do not apply any differently in a criminal case, as the underlying basis for their existence and application is to insure reliability and credibility in the fact-finding process. Justice Powell's remarks are thus instructive here:

> "Few cases are more difficult to try than one of child abuse where the child is very young and does not testify in court. . . . It must be remembered that, in addition to assuring the fair presentation of a plaintiff's case, the [trial] court has the responsibility of shielding defendants from the admission of unduly prejudicial evidence."

*Id.* at 951. As Justice Powell suggested, this balancing of interests, where the evidence at issue is the child's out-of-court statements to a doctor, rests on the need for an assurance of reliability:

> "Rule 803(4) contains a hearsay exception applicable to statements made to a physician for purposes of diagnosis or treatment. At common law, this exception traditionally was based on a dual rationale. First, the declarant's purpose in making the statement normally assures its trustworthiness because diagnosis and treatment may depend on what the patient tells the physician. Secondly, a fact reliable enough to serve as a basis for a physician's diagnosis or treatment generally is considered sufficiently reliable to escape hearsay proscription. Thus, if the declarant's motive in making the statement is consistent with the purpose of promoting treatment, and the content of the statement is reasonably relied on by a physician in formulating a diagnosis or mode of treatment, then the statement presumptively is admissible."

*Id.* (footnote omitted).

■ In New Hampshire, Rule 803(4) contains the additional requirement of circumstances indicating trustworthiness. *See* N.H. R. Ev. 803(4). There are three areas of inquiry in deciding the admissibility of statements pursuant to the medical treatment hearsay exception: the declarant's intent, the subject matter of the statements, and the existence of circumstances to indicate that the statements

are trustworthy. *State v. Roberts*, 136 N.H. 731, 740, — A.2d —, — (1993).

■■ The first prong of this test requires a finding that the declarant intended to make the statements in order to obtain a medical diagnosis or treatment. Diagnosis need not inevitably result in treatment for statements to qualify under the rule, but the diagnosis must have been sought with the purpose of treatment, if necessary. Thus, "the statements must have been made for purposes of medical diagnosis or treatment, as opposed to solely for the purpose of enabling a physician to testify." N.H. R. Ev. 803(4) reporter's notes. The guarantee of trustworthiness is "that no one would willingly risk medical injury from improper treatment by withholding necessary data or furnishing false data to the physician who would determine the course of treatment on the basis of that data." *Cassidy v. State*, 74 Md. App. 1, 26, 536 A.2d 666, 678, *cert. denied*, 312 Md. 602, 541 A.2d 965 (1988). On the other hand, if the declarant is unaware that the statement will enable the physician to make a diagnosis and administer treatment, the statement is not sufficiently trustworthy to qualify under the exception. *R.S. v. Knighton*, 125 N.J. 79, 87–88, 592 A.2d 1157, 1161 (1991). This comports with our decision in *State v. Woods* to exclude the statements at issue there, based on our determination that neither the child nor her mother was motivated by a desire for treatment, *see Woods*, 130 N.H. at 729, 546 A.2d at 1078.

■ As *Woods* implicitly makes clear, the medical treatment exception applies whether the declarant is a child or an adult, and the foundation for admissibility must include a showing that the child possessed the requisite state of mind. It is difficult for a court to discover whether a young child completely understands the purpose for which information is being obtained from her. For this reason it is important that there be affirmative evidence of the child's understanding in order to preserve the trustworthiness guarantee inherent in Rule 803(4). We will not assume, absent a record affirmatively establishing the proposition, that a young child possessed a sufficient treatment motive to allow her out-of-court statements to a physician to be introduced at trial. Therefore, the proponent of Rule 803(4) statements must present evidence establishing that the child had the requisite intent, by showing that the child made the statements understanding that they would further the diagnosis and possible treatment of the child's condition. *See Morgan*, 846 F.2d at 952 (no evidence that four-year-old declarant's "frame of mind was comparable to a patient seeking treatment") (Powell, J., concurring in part

and dissenting in part); *United States v. Renville*, 779 F.2d 430, 438 (8th Cir. 1985) (eleven-year-old child's statements to doctor admissible where, "[b]efore questioning the child, [he] explained to her that the examination and his prospective questions were necessary to obtain information to treat her"); *People in Interest of W.C.L.*, 650 P.2d 1302, 1304 (Colo. App. 1982) (child's statements inadmissible under the medical treatment hearsay exception where "nothing in the record . . . would establish that [she] understood, or was aware of, the purpose of the questioning by the doctor"), *rev'd on other grounds sub nom. W.C.L. v. People*, 685 P.2d 176 (Colo. 1984); *R.S. v. Knighton*, 125 N.J. at 96, 592 A.2d at 1166 (adequate foundation should include evidence that parent or doctor "explained . . . the reason for the [visit] or the need to be truthful when speaking with the doctor[].").

▪ A review of the record in this case reveals that the State failed to establish that the five-year-old child understood the medical purpose of the examinations or the need to answer questions truthfully. During direct examination at the hearing *in limine*, Dr. Jackson testified only about her standard practice when initially seeing a patient, the importance of taking a medical history generally, and the necessity, for purposes of examination and treatment, of obtaining an accurate patient history. Nothing in her testimony, however, indicated that this child understood the need to provide accurate, truthful information. Dr. Packard's brief testimony prior to the court's ruling on admissibility was no more enlightening on the declarant's motive in speaking with him. He stated merely that he took the child's history by asking her what had happened. The child's mother did not testify at all on the subject.

The trial court ruled that both doctors' interviews with the child were for the purpose of medical treatment or diagnosis, and that the statements came within Rule 803(4) as the product of the taking of a medical history. Classifying the statements as medical history, however, satisfies only the second requirement of the rule, that is, that they be "reasonably pertinent to diagnosis or treatment," N.H. R. Ev. 803(4). While this shows the physicians' motives in obtaining the statements, it sheds no light on the motive of the five-year-old declarant who provided them.

Moreover, defense counsel brought this issue to the attention of the trial court. He argued that the rationale behind Rule 803(4)—"that people don't lie to their doctors"—was not satisfied where the declarant was a young child as contrasted "with an adult who is open

with the doctor." This went to the heart of the question of admissibility, as it focused on the declarant's intent at the time of making the statements. The trial court, however, responded, "I think that's a weight question, rather than [an] admissibility question." This ruling was erroneous.

What Chief Justice Kenison wrote remains true: "The fundamental inquiry is not the name or number of the exceptions to the hearsay rule but whether under the circumstances [the evidence] satisfies the *reasons* which lie behind the exceptions." *Perry v. Parker*, 101 N.H. 295, 297, 141 A.2d 883, 884 (1958) (quotation omitted). The reason behind the medical treatment exception is grounded in the state of mind of the declarant at the time the statements are made. The record in this case fails to affirmatively establish that the five-year-old child intended to make the statements to the doctors for purposes of treatment or diagnosis. The statements thus should not have been admitted at trial.

Allowing the hearsay into evidence was not harmless error. Other than Dr. Packard's equivocal findings, it was all that directly established the essential element of penetration. The defendant is therefore entitled to a new trial.

The defendant also argues that all the evidence adduced at his trial was insufficient to prove the element of penetration. After review of the record in the light most favorable to the State, we find sufficient evidence to support the conviction. We reverse and remand for a new trial, however, because of the erroneous admission of the hearsay.

*Reversed and remanded.*

All concurred.