Belknap
No. 97-646

THE STATE OF NEW HAMPSHIRE

v.

RICHARD SOLDI

December 28, 2000

*Philip T. McLaughlin*, attorney general (*Ann M. Rice*, senior assistant attorney general, on the brief and orally), for the State.

*Behzad Mirhashem,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Richard Soldi, appeals his conviction of second degree assault, *see* RSA 631:2 (1996), following a jury trial, arguing that the Superior Court (*Barry,* J.) abused its discretion in: (1) permitting the State to impeach the victim with a prior inconsistent statement; and (2) permitting the victim's treating physician to testify regarding statements made by the victim. We affirm.

The following facts were adduced at trial. The defendant and the victim were romantically involved and had been living together with the victim's two children. In the early morning hours of November 29, 1996, the defendant and the victim were arguing about the victim's makeup and manner of dress. When the victim went into the bedroom, the defendant followed her and struck her in the right eye. He then telephoned 911.

When Officers Stiegler and Ashley arrived at the scene, the victim was crying, her right eye was blackened, and she appeared to be in pain. The defendant told Officer Stiegler that he had lost control, punched the victim, and needed help.

The victim was taken to the hospital by ambulance where she was examined by Dr. Callmerten. She advised him that the defendant had grabbed her by the shoulders and hair and shaken her. She further stated that in an attempt to defend herself, she kneed the defendant in the groin, whereupon he struck her right cheek and eye.

The doctor testified that the victim was in visible pain. Her eye was swollen and her vision blurred. Radiographs were administered. She was diagnosed with a blow-out fracture, released with oral pain medication, and returned the next day for a CAT scan.

At trial, the prosecution called the victim as a witness. She testified that although she had moved to a separate residence shortly after the assault, she and the defendant had since reconciled. While describing the assault, the victim testified that the defendant held her shoulders and tried to make her sit still in order to convince her not to leave with the children, at which point she hit and kicked him.

The prosecutor then questioned the victim about a statement she had given to Officer Ashley concerning the incident, in which she stated that the defendant grabbed her by the hair and shook her, pushed her on the bed and got on top of her, became angry after she kicked him in the groin and struck her in the right eye. She denied

that the defendant had grabbed or shaken her and recanted that portion of her statement in which she reported that the defendant had hit her upon previous occasions. She did admit that the defendant became angry after she kicked him and struck her in the right eye.

The defendant testified at trial and was convicted of second degree assault. On appeal, he contends that the trial court erred in: (1) permitting the State to impeach the victim with her prior inconsistent statement; and (2) permitting the victim's treating physician to testify regarding statements made by the victim.

## I. Impeachment

The defendant contends that *State v. Gomes*, 116 N.H. 113, 352 A.2d 713 (1976), precluded the State from impeaching the victim with her prior inconsistent statements because the State had prior notice of the substance of her trial testimony and therefore was not surprised by it. *See id.* at 114, 352 A.2d at 714. Subsequent to deciding *Gomes*, we adopted New Hampshire Rule of Evidence 607, which provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Rule 607 "departs from the traditional New Hampshire common law doctrine that a party may not impeach their own witness." N.H. R. EV. 607 Reporter's Notes.

The Reporter's Notes to Rule 607 suggest that *Gomes* may have provided guidance in determining whether a party could attack a witness's credibility when the party knows the substance of the witness's testimony and is therefore not surprised. In dicta, *Gomes* enunciated that under the law then existing, a witness's prior inconsistent statements could not be used for impeachment if the State knows the substance of the trial testimony and is not surprised by it. *Gomes*, 116 N.H. at 114, 352 A.2d at 714. Rule 607, however, contains no such limitation. Nor does it establish any preconditions for its applicability. Moreover, Rule 607 gives the trial court discretion to determine whether to admit evidence under the rule, in part to protect "timid witnesses" against overzealous prosecutors. N.H. R. EV. 607 Reporter's Notes. We construe Rule 607 as enabling the court, in the exercise of its sound discretion, to allow a witness's prior statements to be used for impeachment purposes even when the State knows what the substance of the witness's trial testimony will be and is thereby not surprised by it. To the extent that *Gomes* holds otherwise, it is no longer good law. *See* N.H. R. EV. 100 (to the extent that the rules of evidence alter or conflict with the common law, the rules shall govern).

■ While the victim's prior inconsistent statement may be admitted to attack her credibility even if the statement tends to directly inculpate the defendant, the State may not use a statement under the guise of impeachment for the *primary* purpose of placing before the jury otherwise inadmissible substantive evidence. *See United States v. Hogan,* 763 F.2d 697, 702 (5th Cir. 1985). This limitation prevents the State from using impeachment by prior inconsistent statement as a mere subterfuge to avoid the hearsay rule. *See id.*

"Where the [State] has called a witness whose corroborating testimony is instrumental to constructing the [State's] case, the [State] has the right to question the witness, and to attempt to impeach [her], about those aspects of [her] testimony that conflict with the [State's] account of the same events." *United States v. Bacchus,* Nos. 96-1486(L), 96-1557, 1997 WL 138874, at *2 (2d Cir. March 18, 1997) (quotation and brackets omitted). Here, the victim's trial testimony was instrumental to the State's case because she was the only person other than the defendant in the room when the assault occurred.

■ In analyzing whether impeachment of a party's own witness would constitute subterfuge, courts look at whether the witness's testimony contains relevant evidence other than the impeaching evidence. *See United States v. Frappier,* 807 F.2d 257, 259 (1st Cir. 1986); *United States v. Crouch,* 731 F.2d 621, 624 (9th Cir. 1984) (Rule 607 violated where government elicited witness's testimony, which is later impeached for the purpose of admitting otherwise inadmissible evidence, because witness's testimony had little other relevant evidence); Annotation, *Impeachment of Own Witness,* 89 A.L.R. FED 13, 31-36 (1988). The victim testified on direct examination to the following relevant evidence: she and the defendant had an argument regarding the victim's makeup and manner of dress; the argument began in the living room; the defendant followed her into the bedroom; she told Officer Ashley that she kicked the defendant in the groin and that the defendant was upset; she told Officer Ashley that the defendant then hit her; the defendant then left the bedroom and called 911; and she told the officer that she and the defendant had been drinking. We therefore conclude that the impeachment evidence elicited under Rule 607 was properly admitted; the witness's testimony was relevant and impeachment was not used merely to introduce evidence that was otherwise inadmissible. *See Frappier,* 807 F.2d at 259.

## II. Treating Physician's Testimony

The victim's treating physician testified that the victim was brought to the hospital by ambulance with a right eye injury, marked by swelling and discoloration. The victim's description of how the injury was inflicted was consistent with her injury. He diagnosed her with a blow-out fracture. The doctor testified that

> [s]he stated that she had been assaulted by her boyfriend. Evidently they had a verbal argument and in an attempt to diffuse the situation, she left the room and went to bed. She stated to [the physician] that he followed her [into her bedroom] and started shaking her initially by grabbing her hair and her shoulder. She attempted to defend herself and stated that she inadvertently kneed him in the [groin area] and at that point he evidently became further angered and struck her about the right side of her head and face.

The defendant concedes that the victim's statements to the doctor regarding how the defendant "struck her about the right side of her head and face" were made in order to obtain medical treatment. According to the defendant, however, the statements that the defendant followed the victim into the bedroom, grabbed her hair, grabbed her shoulder, and shook her, were inadmissible hearsay.

"Hearsay is generally defined as an extrajudicial statement offered in court to show the truth of the matter asserted in the statement." *State v. Woods*, 130 N.H. 721, 725, 546 A.2d 1073, 1075 (1988); *see* N.H. R. EV. 801(c). "The rule against hearsay holds that hearsay evidence is generally inadmissible, subject to certain well-delineated exceptions." *Woods*, 130 N.H. at 725, 546 A.2d at 1075 (citation omitted). New Hampshire Rule of Evidence 803(4) excepts from the hearsay rule

> [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances indicating their trustworthiness.

"The underlying purpose of this exception is that statements made with the purpose of obtaining medical attention in the form of

diagnosis or treatment are inherently reliable because such statements are made usually with the motivation to obtain an accurate diagnosis or proper treatment; there is normally no incentive to fabricate." *Woods*, 130 N.H. at 729, 546 A.2d at 1077.

"There are three areas of inquiry for a court applying Rule 803(4): the declarant's intent; the subject matter of the statements; and whether there are circumstances indicating the trustworthiness of the statements." *State v. Roberts*, 136 N.H. 731, 740, 622 A.2d 1225, 1232 (1993) (citation omitted). "We will not reverse a trial court's ruling on the admissibility of evidence absent an abuse of discretion." *State v. Young*, 144 N.H. 477, 482, 743 A.2d 1275, 1280 (1999).

To satisfy the first prong, "[a] court must find first that the declarant intended to make the statements to obtain a medical diagnosis or treatment." *Roberts*, 136 N.H. at 740, 622 A.2d at 1232. "This finding may be based upon circumstantial evidence." *Id.* Here, the victim was voluntarily taken by ambulance to the hospital for treatment after the defendant hit her in the face, and she experienced pain as well as swelling from a fracture to a facial bone. "[O]ne can infer that a person who voluntarily visits a doctor intends to obtain medical attention. . . ." *Id.* at 741, 622 A.2d at 1232.

To satisfy the second prong of the *Roberts* test, "the statements must describe medical history, or symptoms, pain, sensations, or their cause or source to an extent reasonably pertinent to diagnosis or treatment." *Id.* at 741, 622 A.2d at 1233 (quotation omitted). The defendant contends that the victim's statement that the defendant followed her into the bedroom was not reasonably pertinent to diagnosis or treatment. Even if we assume without deciding that this statement was not pertinent to diagnosis or treatment, it had previously been introduced. In fact, the victim had previously testified, without objection, that she and the defendant had an argument that began in the living room, she went to the bedroom to go to sleep, and the defendant followed her. Because this testimony was already introduced, we cannot say that the defendant was prejudiced by its subsequent introduction by the victim's treating physician.

We disagree with the defendant that the victim's statement that the defendant grabbed her hair and her shoulder, and shook her were not pertinent to medical diagnosis or treatment. The physician was presented with a victim of an assault. According to his testimony, obtaining a history of how the injury took place was vitally important in making an accurate diagnosis. During *voir dire*, the physician testified that it was standard procedure to obtain a verbal history from patients who suffered a traumatic injury,

including a description of how the patient was injured. He testified that, in dealing with traumatic injuries, the mechanism of injury is important in order to ascertain what tissues may be most at risk of being damaged. Inclusion of certain information in a doctor's diagnostic notes amounts to *prima facie* evidence that it was pertinent. 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.09[6] (2d ed. 2000).

The third prong of the *Roberts* test requires that circumstances exist indicating the trustworthiness of the statements. *Roberts*, 136 N.H. at 743, 622 A.2d at 1234. The State contends that this issue was not preserved because the defendant failed to challenge the trustworthiness of the statements during the preliminary hearing. Assuming without deciding that this issue was preserved, we disagree with the defendant that the victim's statements lack the requisite indicia of trustworthiness. The statements at issue were made within hours of the assault and were consistent with the victim's initial account to the police. Furthermore, the victim made the statements while seeking medical treatment. "The guarantee of trustworthiness is that no one would willingly risk medical injury from improper treatment by withholding necessary data or furnishing false data to the physician who would determine the course of treatment on the basis of that data." *State v. Wade*, 136 N.H. 750, 755, 622 A.2d 832, 835 (1993) (quotation omitted).

■ The defendant argues that the statements at issue are not trustworthy because the statements were made to an emergency room physician with whom the victim had "no prior relationship of trust," the statements were made while the victim was intoxicated, and the victim subsequently renounced the contents of the statements under oath. We find this argument to be unpersuasive. All the circumstances indicate that the victim was motivated by a desire for treatment when she made the statements to the physician. *See id.* That the victim later changed her story does not defeat the trustworthiness of the initial statements. We therefore hold that the trial court did not abuse its discretion by admitting the victim's statements.

*Affirmed.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.