NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2014-0631


THE STATE OF NEW HAMPSHIRE

v.

JOSEPH KUCHMAN

Argued: November 12, 2015
Opinion Issued: April 19, 2016


Joseph A. Foster, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.


Mirhashem Law Office, PLLC, of Manchester (Behzad Mirhashem on the brief and orally), for the defendant.


BASSETT, J. The defendant, Joseph Kuchman, appeals decisions of the Superior Court (Lewis and Brown, JJ.) related to his conviction by a jury on one count of first degree assault. See RSA 631:1, I (2007). The defendant argues that the trial court erred when it denied his request for a bill of particulars, denied his multiple motions for a mistrial, and admitted evidence of a telephone conversation. For the reasons that follow, we affirm.

The jury could have found the following facts. On January 19, 2011, the victim was working at a bar in Rochester. At approximately midnight, the

defendant and his friend, Joshua Texeira, entered the bar. While there, the defendant and Texeira became loud. The victim and the bartender repeatedly asked them to be quiet, but they did not do so. Following an argument with the victim and the manager of the bar, the defendant and Texeira were escorted outside, where the defendant threatened the victim and stated that he was going to come back for him. Eventually, the defendant and Texeira walked away.

A few minutes later, the victim went out of the back door of the bar to take out the trash and to smoke. The victim saw the defendant and Texeira standing near one of the dumpsters, and asked "if they had lost something." Neither responded, but both the defendant and Texeira approached the victim. Texeira then took out an expandable baton that had been in his truck, and hit the victim with it. The victim fell down, and was kicked several times. The victim testified that, during the attack, the defendant asked him if he "was a tough guy now."

Once the attack stopped, the victim went back inside the bar, and several people ran outside and chased Texeira and the defendant to Texeira's truck. The police and paramedics eventually arrived at the scene, and the victim was transported to the hospital. The victim suffered multiple severe injuries. The victim later identified, by way of photographic lineups, both the defendant and Texeira as his attackers.

A grand jury issued one indictment against the defendant alleging two counts of first degree assault. See RSA 631:1, I. Each count alleged that the defendant, acting "in concert with Joshua Texeira," caused bodily injury to the victim. The defendant was also charged by information with two counts of simple assault. See RSA 631:2-a (2007). One of the simple assault charges was nolle prossed prior to trial. After the State rested at trial, the trial court dismissed one of the first degree assault counts. The jury acquitted the defendant of the remaining simple assault charge, but found him guilty of the remaining first degree assault count. This appeal followed.

I. Bill of Particulars

On appeal, the defendant first argues that the trial court erred when it denied his motion for a bill of particulars, in which he argued that the first degree assault indictment did not provide him with information concerning his alleged criminal acts sufficient to permit him to properly prepare for trial. The first count, which was ultimately dismissed by the trial court, alleged that the defendant "in concert with Joshua Texeira, purposely cause[d] serious bodily injury to [the victim] by striking him in the face with a baton or blunt object, fracturing [the victim's] nose." The second count alleged that the defendant, acting "in concert with Joshua Texeira, knowingly cause[d] bodily injury to [the victim] by means of a deadly weapon by striking him in the head and body with

2

a baton or blunt object, fracturing [the victim's] nose and causing lacerations to his scalp and face."

The State filed an objection to the defendant's motion, arguing that the indictment was "more than sufficient for the defendant to prepare his defense as it puts him on notice that the State has to prove that he in some way solicited, aided, agreed or attempted to aid in the First Degree Assault of [the victim]." The trial court denied the defendant's motion.

On appeal, the defendant argues that the trial court erred when it denied his motion for a bill of particulars because the indictment charging him with acting "in concert with" Texeira implicated numerous theories of liability, and, therefore, he did not know which theory of liability that the State would rely upon at trial. According to the defendant, he was prejudiced and unable to prepare an intelligent defense because "[e]ven as he was about to deliver his closing argument," he "still did not know what theory of . . . liability would be relied upon by the State." The defendant also asserts that, because the State proceeded against him solely as an accomplice, rather than as both an accomplice and a principal, we should subject the indictment to more stringent review.

Part I, Article 15 of the New Hampshire Constitution "requires that an indictment describe the offense with sufficient specificity to ensure that the defendant can prepare for trial and avoid double jeopardy." State v. Woodard, 146 N.H. 221, 227 (2001) (quotation omitted). "An indictment generally is sufficient if it recites the language of the relevant statute; it need not specify the means by which the crime was accomplished or other facts that are not essential to the elements of the crime." State v. Carr, 167 N.H. 264, 269 (2015) (quotation omitted).

A "bill of particulars is, in this State, a tool for clarifying an inadequate indictment or complaint." State v. Sanborn, 168 N.H. ___, ___, 130 A.3d 563, 577 (2015) (quotation omitted); see State v. Kelly, 160 N.H. 190, 196 (2010) (noting that "it may be good practice to ask for a bill of particulars if a defendant is unsure of the specific acts alleged"). "The purpose of a bill of particulars is to protect a defendant against a second prosecution for an inadequately described offense and to enable him to prepare an intelligent defense." Sanborn, 168 N.H. at ___, 130 A.3d at 577 (quotation omitted); see State v. Chick, 141 N.H. 503, 507 (1996) ("The State is not required to provide a bill of particulars except when necessary for the preparation of a defense or to preclude a later unconstitutional prosecution." (quotation omitted)). "The decision whether to grant a motion for a bill of particulars is committed to the trial court's sound discretion." State v. Sweeney, 151 N.H. 666, 678 (2005). "We will not reverse the trial court's decision unless the defendant shows that it was clearly untenable or unreasonable to the prejudice of his case." Id.

Here, the two-count indictment alleged that the defendant acted "in concert with" Texeira to cause injury to the victim. We have "consistently stated that language in an indictment alleging that a defendant acted 'in concert with' another is sufficient to charge the defendant both as a principal and as an accomplice." State v. Winward, 161 N.H. 533, 539 (2011) (quotation omitted). Thus, even assuming that — despite the "in concert with" language used in the indictment here — as the defendant asserts, the State proceeded against him solely as an accomplice, he was sufficiently charged at least as an accomplice to the assault. Accordingly, the indictment provided sufficient notice to the defendant that he was charged, at the very least, with soliciting, aiding, or attempting to aid Texeira in causing bodily injury to the victim through the use of a baton or other blunt object. See id. (concluding in attempted burglary case that, because "indictment clearly alleged both principal and accomplice liability, it provided sufficient notice to the defendant that he was charged with either removing the window screen himself or soliciting, aiding or attempting to aid another in removing the window screen").

Moreover, all of the elements of first degree assault were alleged in the indictment. See RSA 631:1, I (describing elements of first degree assault). As we have stated, "[a]n indictment is generally sufficient if it recites the language of the relevant statute: typically it need not specify the means by which the crime was accomplished, or other facts that are not essential elements of the crime." Chick, 141 N.H. at 506; see Carr, 167 N.H. at 269.

Additionally, because the defendant was charged at least as an accomplice, "there is no further and independent requirement to identify the acts by which [the] defendant may have committed the offense, or to limit proof of guilt to acts specifically pleaded." Winward, 161 N.H. at 540 (quotation and brackets omitted). "Generally, there is no requirement that the State allege each of the defendant's possible acts as an accomplice." Id. at 541; see State v. Doucette, 146 N.H. 583, 590 (2001) (stating that "an accomplice may be convicted on the basis of overt acts not specifically alleged in an indictment").

Furthermore, regardless of whether the State ultimately proceeded against the defendant solely as an accomplice, the indictment alleged both principal and accomplice liability due to the "in concert with" language. See Winward, 161 N.H. at 539. We, therefore, disagree with the defendant that we should subject the indictment to more stringent review.

As we have stated, the "question is not whether the indictment could have been more certain and comprehensive, but whether it contains the elements of the offense and enough facts to warn a defendant of the specific charges against him." State v. Marshall, 162 N.H. 657, 661-62 (2011). That requirement has been met in this case, and we, therefore, conclude that the indictment was sufficient.

4

Nevertheless, the defendant argues that the trial court should have granted his motion for a bill of particulars because there were "at least eight distinct theories of accomplice liability potentially implicated in the case" and his defense preparation "would be impacted" by the particular theory advanced by the State. We disagree. Although "there may be cases in which . . . reasonable trial preparation would require an allegation of the specific conduct by which an accomplice is supposed to have aided in the commission of the offense, such specification is not always required." Doucette, 146 N.H. at 590. That specification was not required here.

It appears that the defendant hoped to use a bill of particulars to simplify his defense strategy by forcing the State to narrow its theory of liability. That, however, is not the purpose of a bill of particulars; rather, a bill of particulars is meant to clarify an inadequate indictment and enable the defendant to prepare an intelligent defense. See Sanborn, 168 N.H. at ___, 130 A.3d at 577. As noted above, the indictment here was adequate. Moreover, the fact that the defendant — in his motion for reconsideration filed prior to trial — set forth several distinct theories of liability that the prosecution could rely upon at trial, demonstrates that he was able to anticipate those theories and, thus, prepare an intelligent defense.

Therefore, "if any prejudice [to the defendant] arose from these facts it was not undue prejudice." Winward, 161 N.H. at 541 (brackets omitted); see Sweeney, 151 N.H. at 678 (stating that we will not reverse a trial court's decision regarding a motion for a bill of particulars "unless the defendant shows that it was clearly untenable or unreasonable to the prejudice of his case"). We conclude that the trial court did not unsustainably exercise its discretion when it declined to grant the defendant's motion for a bill of particulars.

II. Acting in Concert

The defendant next argues that the trial court erred when it denied his motion for a mistrial after the State had elicited certain testimony from Texeira at trial. During the State's direct examination of Texeira, after Texeira had provided an account of the incident in question, the prosecutor asked, "So you were convicted of first degree assault [against the victim] for acting in concert with [the defendant], right?," and Texeira responded, "Yes, I was." The defendant then objected, requested a curative instruction, and moved for a mistrial. The trial court sustained the objection and provided a curative instruction, but denied the motion for a mistrial. The defendant unsuccessfully sought reconsideration.

"A mistrial is appropriate only if the evidence or comment complained of was not merely improper, but also so prejudicial that it constituted an irreparable injustice that cannot be cured by jury instructions." State v.

5

Russo, 164 N.H. 585, 589 (2013) (quotation omitted); see State v. Wells, 166 N.H. 73, 76 (2014) ("A mistrial is appropriate when the circumstances indicate that justice may not be done if the trial continues to a verdict." (quotation omitted)). "To warrant a mistrial, the prejudicial effects of the inadmissible evidence must be such that the trial court cannot unring a bell once it has been rung." Wells, 166 N.H. at 77 (quotation, brackets, and emphasis omitted). "When reviewing a trial court's ruling on a motion for a mistrial, we recognize that the trial court is in the best position to gauge the prejudicial nature of the conduct at issue and has broad discretion to decide whether a mistrial is appropriate." Russo, 164 N.H. at 589 (quotation omitted). "We will not overturn the trial court's decision on whether a mistrial or other remedial action is necessary absent an unsustainable exercise of discretion." Id. (quotation omitted).

On appeal, the defendant argues that the testimony elicited from Texeira was "highly prejudicial" and allowed the jury to improperly infer that, because Texeira had already been found guilty of assaulting the victim "in concert with" the defendant, then the defendant must also be guilty of the same crime. For support, the defendant relies upon cases that have held that evidence that a co-perpetrator of a crime was convicted is inadmissible for substantive purposes because of the potential for prejudice. See, e.g., Clemmons v. State, 720 A.2d 1170, 1173 (Md. 1998) (explaining that "ordinarily, the conviction or guilty plea of a co-perpetrator may not be used as substantive evidence of another's guilt" and collecting cases); State v. Marcano, 138 N.H. 643, 646 (1994) (stating that, in the context of a conspiracy case, the "potential for prejudice is overwhelming where evidence of a co-conspirator's conviction is admitted for substantive purposes" because the "jury may abdicate its duty and regard the issue of the remaining defendant's guilt as settled and the trial as a mere formality" (quotation omitted)).

Although the testimony at issue in this case may have been prejudicial, and although a mistrial may have been warranted had the testimony been admitted into evidence by the trial court, we disagree with the defendant that, under the circumstances of this case, a mistrial was required. Here, the testimony was not admitted against the defendant; rather, the trial court sustained the defendant's objection to the testimony and immediately gave a curative instruction, in which it told the jury that it could not consider or use Texeira's conviction as evidence against the defendant. The trial court further explained that the jury in Texeira's case had made no determination regarding the defendant's guilt in this case. Cf. Clemmons, 720 A.2d at 1173 ("[O]rdinarily, the conviction or guilty plea of a co-perpetrator may not be used as substantive evidence of another's guilt." (emphasis added)). Because the jury is presumed to follow instructions, we conclude that the trial court's instruction in this case effectively cured any prejudice to the defendant. See State v. Gibson, 153 N.H. 454, 460-61 (2006) (concluding that trial court's curative instruction "clearly instructed the jury to disregard [a witness's]

remark and not draw any inferences from it," and, therefore, it "sufficiently cured any prejudice stemming from [that] statement"); cf. United States v. Ofray-Campos, 534 F.3d 1, 23-24 (1st Cir. 2008) (explaining that trial court's statement regarding incarceration of absent co-defendants was prejudicial, and noting that a "proper instruction" to jury to not consider co-defendants' incarcerated or guilty status when reaching verdict as to defendants on trial, could have "safeguard[ed]" against statement's prejudice). Accordingly, we conclude that the trial court did not unsustainably exercise its discretion when it denied the defendant's motion for a mistrial arising out of the exchange between the prosecutor and Texeira.

III. Admission of Telephone Conversation

Next, the defendant argues that the trial court should have excluded from evidence a telephone conversation between Texeira and Texeira's mother. He asserts that the conversation was inadmissible under New Hampshire Rule of Evidence 403 because any probative value that it had was substantially outweighed by the danger of unfair prejudice.

During his direct examination by the State, Texeira testified that he was deposed prior to trial. He acknowledged that he had lied during the deposition and later changed some of the answers that he had provided. One of the deposition lies concerned whether Texeira used a weapon against the victim; in his deposition, he claimed that he did not have a weapon during the attack, and at trial he testified that, in fact, he had hit the victim with a baton. When the State asked during trial whether he had lied at the deposition to protect the defendant, Texeira responded, "No. It had nothing to do with him."

Over the defendant's objection, the State then read from a transcript of a telephone conversation between Texeira and his mother. Texeira testified that the telephone conversation took place after his deposition, but before he had changed his deposition testimony. During the conversation, Texeira told his mother:

> So, I -- like I don't know what to do. I need to get a hold of this guy and, like, I pretty much have to change these questions. But the thing is, it's about the weapon. So if I change it and say, oh yeah, well, I did have a weapon like I screwed up, I wasn't thinking right, I got to fricking change it, I don't know if that's going to screw [the defendant] or not. You know what I mean? Because now they can prove -- because the way the questions are worded, if I say, oh, well, I did have a weapon and we went to my truck to grab a weapon, then they're going to be like, well, obviously [the defendant] knew what -- we were planning to do this or something. . . . So they're going to get him with acting in concert.

7

Thereafter, in response to a request from the defense for a limiting instruction, the trial court instructed the jury that it was to consider the conversation only for the purpose of impeaching Texeira and not as substantive evidence of the defendant's guilt.

The defendant argues on appeal that the conversation between Texeira and Texeira's mother should have been excluded under Rule 403 because the danger of unfair prejudice from admission of the conversation substantially outweighed any probative value. We disagree.

"Rule 403 is an exclusionary rule that cuts across the rules of evidence." State v. Miller, 155 N.H. 246, 251 (2007) (quotation omitted); see N.H. R. Ev. 403. Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.H. R. Ev. 403. "We accord the trial court considerable deference in determining whether to admit or exclude evidence under Rule 403, and we will not disturb its decision absent an unsustainable exercise of discretion." State v. Perri, 164 N.H. 400, 408 (2012). "To show an unsustainable exercise of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." Id.

The conversation between Texeira and his mother had significant probative value. As the trial court correctly observed, the conversation contradicted Texeira's testimony that he had not lied during his deposition to protect the defendant. The conversation, therefore, was highly probative of Texeira's credibility — a crucial factor in this case given Texeira's role in the incident and the fact that, other than the defendant and the victim, Texeira was the only person involved in, and witness to, the attack itself. Thus, we are not persuaded by the defendant's assertion that, because Texeira had already admitted to lying at his deposition, the conversation with his mother "had minimal probative value" as impeachment evidence. See State v. Hebert, 158 N.H. 306, 312 (2009) (finding unpersuasive defendant's argument that other means State used to impeach him minimized probative value of his habitual offender conviction).

We next consider whether the danger of unfair prejudice to the defendant from the admission of the conversation substantially outweighed its probative value. See Wells, 166 N.H. at 80. With little explanation, the defendant contends that the conversation was "highly and unfairly prejudicial." We disagree.

"Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to

base its decision on something other than the established propositions in the case." State v. Cassavaugh, 161 N.H. 90, 98 (2010) (quotation omitted). "Unfair prejudice is not, of course, a mere detriment to a defendant from the tendency of the evidence to prove his guilt, in which sense all evidence offered by the prosecution is meant to be prejudicial." Id. (quotation omitted). "Rather, the prejudice required to predicate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged." Id. (quotation omitted).

Here, there is little, if anything, within Texeira's conversation with his mother that would appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or otherwise induce a decision against the defendant on an improper basis. Compare State v. Willis, 165 N.H. 206, 220 (2013) (concluding that risk of undue prejudice from questions regarding witness's motive to lie was minimal because, "unlike an improper appeal to emotion, the inquiry into a witness's bias provides important and legitimate information for the fact finder to consider"), with State v. Jenot, 158 N.H. 181, 186-87 (2008) (testimony that defendant had been sexually assaulted "would have an undue tendency to create sympathy with the jury and induce a decision on some improper basis, one that is emotionally charged" because jurors could have "based their decision upon the defendant's status as a victim" rather than upon facts adduced at trial (quotation and ellipses omitted)). Accordingly, given the conversation's considerable probative value and the minimal danger of unfair prejudice, we conclude that the trial court did not unsustainably exercise its discretion when admitting the conversation under Rule 403.

Although the defendant also asserts that the conversation constitutes inadmissible hearsay, this argument was neither raised in his notice of appeal, nor included within his motion to add issue that we granted. Accordingly, it is not preserved for our review. See State v. Blackmer, 149 N.H. 47, 49 (2003) ("An argument that is not raised in a party's notice of appeal is not preserved for appellate review.").

IV. Limiting Instruction

The defendant next argues that, because the trial court "delayed" several days in providing the limiting instruction regarding Texeira's telephone conversation with his mother, the trial court erred when it declined to grant a mistrial. After the State had read from the transcript containing the conversation, the defendant requested that the trial court provide a limiting instruction to the jury. The defendant sought to have the trial court explain to the jury that the conversation was admitted for impeachment purposes only, and not as substantive evidence of the defendant's guilt. In response, the State argued that the conversation was admissible substantively. The trial court declined to provide an instruction at that time, explaining that it wanted the

parties to brief the issue and that it needed time for research. The trial court then excused the jury for the day. After the jury left, defense counsel stated to the trial court that he "agree[d] 100 percent [that] decisions made in haste are never as good as decisions that are thought about."

Thereafter, the State filed a motion in which it argued that the conversation was admissible both substantively and for impeachment purposes. In response, the defendant filed a motion for a mistrial in which he argued that, at a minimum, a limiting instruction should be provided. After a hearing on the defendant's motion for a mistrial, the trial court denied the motion, but decided to give a limiting instruction to the jury. When the jury returned, which occurred five calendar days after the State had read from the transcript, the trial court instructed the jury that it was to consider the conversation only for the purpose of impeaching Texeira and not as substantive evidence of the defendant's guilt.

The defendant now argues that, because the trial court declined to provide an immediate limiting instruction regarding the conversation, a mistrial should have been granted. We disagree.

First, although the trial court provided its limiting instruction five calendar days after the State had read from the conversation transcript, the limiting instruction was provided immediately upon the jury's return to the courtroom on the very next trial day. No evidence was presented between the time that the defendant requested, and the trial court gave, the limiting instruction. See United States v. Fench, 470 F.2d 1234, 1241 (D.C. Cir. 1972) (concluding that, although trial court did not provide limiting instruction immediately upon admission of testimony, there was no reversible error because adequate instruction was provided the next day and no additional evidence was presented before instruction was provided). We are not convinced that the defendant suffered any significant degree of prejudice — let alone prejudice that "constituted an irreparable injustice," Russo, 164 N.H. at 589 (quotation omitted) — by the trial court's decision to allow the parties time to brief, and then argue, the admissibility of the conversation and whether a limiting instruction was necessary. See State v. Angoy, 746 A.2d 1046, 1052-53 (N.J. Super. Ct. App. Div. 2000) (finding that, although a "prompt delivery of limiting instructions" was "preferable," there was no prejudice and no basis for reversal when two weeks elapsed between admission of evidence and delivery of limiting instruction). Accordingly, we conclude that the trial court did not unsustainably exercise its discretion when it declined to grant the defendant's motion for a mistrial on these grounds.

V. Examination of Texeira

The defendant next asserts that the trial court should have granted a mistrial because of "the tenor and content of the prosecutor's examination of

Texeira." At trial, the defendant argued that a mistrial was warranted because the State had called Texeira for the primary purpose of impeaching him and to place before the jury otherwise inadmissible evidence. The trial court denied the defendant's motion, explaining that the State has a right to impeach its own witness. The trial court also explained that the impeachment of Texeira did not constitute subterfuge because, as the only other person with the defendant during many of the disputed events, Texeira provided information that was instrumental to the State's case. On appeal, the defendant reiterates the arguments that he made before the trial court. We disagree with the defendant that the trial court unsustainably exercised its discretion when it declined to grant his motion for a mistrial.

Rule 607 of the New Hampshire Rules of Evidence provides that the "credibility of a witness may be attacked by any party, including the party calling the witness." N.H. R. Ev. 607. Although this rule expressly permits the State to impeach its own witnesses, we have held that "the State may not use a statement under the guise of impeachment for the primary purpose of placing before the jury otherwise inadmissible substantive evidence." State v. Soldi, 145 N.H. 571, 574 (2000). "This limitation prevents the State from using impeachment by prior inconsistent statement as a mere subterfuge to avoid the hearsay rule." Id. However, "[w]here the State has called a witness whose corroborating testimony is instrumental to constructing the State's case, the State has the right to question the witness, and to attempt to impeach [the witness], about those aspects of [the witness's] testimony that conflict with the State's account of the same events." Id. (quotation and brackets omitted). "In analyzing whether impeachment of a party's own witness would constitute subterfuge, [we] look at whether the witness's testimony contains relevant evidence other than the impeaching evidence." Id.

Here, although the State impeached Texeira at length during its direct examination of him, Texeira also provided evidence that was relevant and instrumental to the State's case against the defendant. As the trial court correctly observed, Texeira was the only person with the defendant during critical parts of the night in question. As an admitted participant in the attack, Texeira's testimony also provided pertinent evidence concerning the attack and the defendant's role in it. Accordingly, the State's impeachment of Texeira, its witness, did not constitute subterfuge, and we, therefore, conclude that the trial court did not unsustainably exercise its discretion when it declined to grant the defendant's motion for a mistrial on these grounds. See id. (concluding that, because victim was "the only person other than the defendant in the room when the assault occurred," her testimony regarding the assault was "instrumental to the State's case" and impeachment was not used merely to introduce otherwise inadmissible evidence); see also State v. Wamala, 158 N.H. 583, 596-97 (2009) (permitting impeachment of two witnesses because their testimony also contained evidence that was relevant and instrumental to State's case).

VI.  Defendant's Silence

Finally, the defendant argues that a mistrial should have been granted when, during the State's cross-examination of the defendant, the State asked why he was not "willing to give" his version of the incident "until now."  After the State asked this question, the defendant objected and moved for a mistrial, arguing that the question constituted an impermissible comment upon the defendant's right to remain silent.  The trial court gave the jury a limiting instruction, and, after the defendant argued that the instruction did not sufficiently address his concern, the trial court gave further instruction.  The trial court, however, did not grant a mistrial.

On appeal, the defendant argues that, because he has a constitutional right not to have his post-arrest silence used to impeach him at trial, the trial court erred when it declined to grant a mistrial.  The defendant asserts that we "should hold that it is improper to cross-examine a defendant about how he did not come forward until he testified at trial to provide his account of the charged incident."

Although the defendant raises his appellate arguments under both the State and Federal Constitutions, the defendant has failed to demonstrate that he preserved an argument under the State Constitution.  See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).  To "preserve a state constitutional claim, the defendant must:  (1) raise it in the trial court; and (2) specifically invoke a provision of the State Constitution in his brief."  State v. Oakes, 161 N.H. 270, 285 (2010).  Here, the defendant's mere reference to his right to remain silent during his argument before the trial court was insufficient to preserve a state constitutional claim for our review.  See In the Matter of Kempton & Kempton, 167 N.H. 785, 793 (2015) (concluding that respondent's "mere reference to 'due process'" at a hearing and in a motion was insufficient to preserve state constitutional claim for review).  Therefore, we confine our analysis to the Federal Constitution.

The United States Supreme Court has held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment."  Doyle v. Ohio, 426 U.S. 610, 619 (1976); see Miranda v. Arizona, 384 U.S. 436, 478-79 (1966).  However, the Court has qualified this general holding by explaining that the Federal Constitution is not violated when the prosecution impeaches a defendant's testimony by referencing either the defendant's pre-arrest silence, or the defendant's post-arrest, but pre-Miranda, silence.  See Fletcher v. Weir, 455 U.S. 603, 604-07 (1982) (post-arrest, pre-Miranda silence); Jenkins v. Anderson, 447 U.S. 231, 238-40 (1980) (pre-arrest silence).  As the Supreme Court has stated, "the Constitution does not prohibit the use for impeachment purposes of a

defendant's silence prior to arrest, or after arrest if no Miranda warnings are given." Brecht v. Abrahamson, 507 U.S. 619, 628 (1993) (citation omitted).

Thus, unless Miranda warnings have been given to a defendant, the Due Process Clause of the Fourteenth Amendment does not prohibit the use of a defendant's silence to impeach him or her at trial. See Fletcher, 455 U.S. at 607 ("In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand."); see also State v. Hill, 146 N.H. 568, 577 (2001) (explaining that "a defendant who has not received Miranda warnings cannot rely on Doyle in support of a claim that the use of his silence violates his right to due process under the Fourteenth Amendment").

Here, the defendant has not offered any evidence that he ever received Miranda warnings. See Bean, 151 N.H. at 250 (stating that it "is the burden of the appealing party . . . to provide this court with a record sufficient to decide [his or] her issues on appeal"). Accordingly, we conclude that the State's questioning of the defendant during cross-examination concerning his silence prior to trial did not violate his due process rights under the Federal Constitution. See Brecht, 507 U.S. at 628; Fletcher, 455 U.S. at 607.

To the extent that the defendant argues that his rights under the Fifth Amendment of the United States Constitution were violated because of the State's inquiry at trial, we decline to address his argument because it is not sufficiently developed for judicial review. See State v. Roy, 167 N.H. 276, 290 (2015) (declining to address insufficiently developed argument); see also Hill, 146 N.H. at 577 (explaining that the "issue of Fourteenth Amendment due process" and "the issue of any Fifth Amendment rights as incorporated by the Due Process Clause of the Fourteenth Amendment" are "distinct concepts"). Accordingly, we conclude that the trial court did not unsustainably exercise its discretion when it declined to grant a mistrial on these grounds.

Any arguments that the defendant raised in his notice of appeal that he has not briefed are deemed waived. See Blackmer, 149 N.H. at 49.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.